**UNITED STATES of America, Plaintiff-Appellee,**

v.

**INDIANA BONDING AND SURETY CO., Defendant-Appellant.**

No. 78–2937.

United States Court of Appeals, Fifth Circuit.

Aug. 27, 1980.

Rehearing Denied Oct. 16, 1980.

**28**

David B. Dickinson, Houston, Tex., for defendant-appellant.

Anna E. Stool, Vidal G. Martinez, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, FRANK M. JOHNSON, Jr., and HENDERSON, Circuit Judges.

HENDERSON, Circuit Judge:

The United States of America, acting on behalf of the Commodity Credit Corporation (CCC), brought this action pursuant to the provisions of 28 U.S.C.A. § 1345 in the United States District Court for the Southern District of Texas seeking damages resulting from the alleged violation of the terms and conditions of a fidelity bond issued to the CCC by Indiana Bonding and Surety Company (Indiana). The district court entered a final judgment against Indiana in the amount of $7,270.41 plus interest. We affirm.

On January 20, 1967, the CCC and United Bonding Company (United) entered into a blanket fidelity bond, Blanket Bond No. CP–11521, to indemnify the CCC against loss resulting from fraud, dishonesty, culpable negligence or breach of trust by any of its employees. The term of the bond covered the period from February 1, 1967 to January 31, 1972. On December 31, 1970, Indiana and United entered into a Reinsurance and Assumption Agreement whereby Indiana assumed 100% of United's liability under Blanket Bond number CP–11521 with "the same force and effect as if a new bond were issued effective January 1, 1971."

On January 24, 1972, Indiana and the CCC executed Blanket Fidelity Bond No. B16962, which was to be effective from February 1, 1972 to January 31, 1977, unless terminated earlier by one of the parties. The United States, through the CCC, terminated the bond on September 30, 1972.

The government's proceedings against Indiana were occasioned by the acts of Clifford Feisel, an agricultural commodity inspector employed by the Tama County, Iowa office of the Agricultural Stabilization and Conservation Service (ASCS). Feisel's duties included the inspection of commodities stored as collateral for commodity loans made by the Department of Agriculture under the Farm Storage Price Support Loan Program. Acting in such capacity, Feisel was an employee of the CCC within the fidelity bond coverage. On August 28, 1970, Feisel conducted the annual inspection of the pledged commodities which were stored on the farm of Alan K. Timm. Timm had previously obtained various commodity loans which were secured by his corn crops for 1967, 1968 and 1969; his soybean crop for 1969; and his 1969 oat crop. Upon inspection, Feisel discovered shortages in the grain pledged by Timm. Removal of these commodities without prior approval of the ASCS was prohibited under the terms of the Farm Storage Price Support Loan Program. Nevertheless, Feisel, instead of reporting the shortages to the ASCS county office as required certified that the pledged crops were in satisfactory condition and eligible for resale. The district court found, and the parties acknowledge, that the failure to report the shortages amounted to fraud, dishonesty, culpable negligence and breach of trust within the meaning of the blanket fidelity bonds executed for the protection of the CCC.

The local office of the ASCS first learned of the shortages in the commodities when Timm sold his farm in March of 1971. On June 2, 1972, the loss was brought to the attention of Emil Dietsch, Assistant Treasurer, Chief, Claims Branch, Fiscal Division, ASCS. Dietsch notified Indiana in writing of the possibility of a loss on June 5, 1972. A claim was filed on behalf of the CCC on

July 1, 1974. Indiana denied the claim on September 11, 1974, and the government brought suit against Indiana on December 6, 1976.

█ Indiana first challenges the judgment entered below upon the ground that the government's cause of action was barred by the six-year statute of limitations contained in 15 U.S.C.A. §§ 714b, 714c. We decline to address this issue because it was never properly raised before the trial court. Indiana did not affirmatively plead the limitations defense as required by Fed.R.Civ.P. 8(c), nor did it mention the statute of limitations in its proposed findings of facts and conclusions of law or before the court at the trial on the merits. Even though this issue was listed as one of the defendant's contentions in the pretrial order, and was thus presumably triable, Indiana's failure to present evidence in support of the defense before the district court precludes our review of it here.

With respect to the remainder of the issues raised by Indiana, we deal first with its assertion that the district court erroneously construed Blanket Fidelity Bond No. B16962 to include the CCC's losses. Paragraph 2 of the Conditions and Limitations section of this bond reads as follows:

> Loss is covered under this bond only (a) if sustained through any act or acts committed by any employee while this bond is in force as to such employee, subject, however, to the paragraph of this bond entitled INDEMNITY AGAINST LOSS UNDER PRIOR BOND OR POLICY and (b) if discovered by the Executive Vice-President, CCC or any of his designees prior to the expiration of twelve months from the expiration of this bond in its entirety as provided in Section Eight or from its cancellation or termination in its entirety in any other manner, whichever shall first happen.

The paragraph entitled "Indemnity Against Loss Under Prior Bond or Policy" provides:

> If the coverage of this bond is substituted for or succeeds any prior bond or policy of

insurance carried by the Insured which is terminated, cancelled or allowed to expire as of the time of such substitution or succession, the Underwriter agrees to indemnify the Insured against loss of money or other properties as aforesaid, which was sustained by the Insured and discovered as provided in Section 2(b) and which would have been recoverable by the Insured under such prior bond or policy, except for the fact that the time within which to discover loss thereunder had expired. . . .

Bond No. CP–11521 contains essentially the same terms.

In reaching its determination that the government is entitled to recover under Bond No. B16962, the district court reasoned that the loss was sustained during the period in which Bond No. CP–11521 (the United bond) was in effect; under the terms of the Reinsurance and Assumption Agreement executed by United and Indiana, the United bond was terminated as of January 1, 1971; the loss was not "discovered" within the meaning of the bond language until Dietsch received notice of it on June 2, 1972; consequently, the loss having been discovered 18 months after the termination of Bond No. CP–11521, recovery under that bond was precluded; the loss was discovered in accordance with paragragh 2(b) of Bond No. B16962, and was, therefore, recoverable under the "Indemnity Against Loss Under Prior Bond or Policy" provision of that instrument.

Indiana's basic disagreement with this analysis concerns the district court's finding that the United bond was terminated by the Reinsurance and Assumption Agreement. It maintains that Bond No. CP–11521 was in effect until January 31, 1972, the expiration date originally agreed upon. Thus, under Indiana's interpretation, the loss was discovered within twelve (12) months of the expiration of the United bond and, hence, was recoverable under its terms rather than those of Bond No. B16962.[1]

---

1. Of course, Indiana would also be liable for the loss recoverable under Bond No. CP–11521 since it had assumed United's liability by entering into the Reinsurance and Assumption Agreement. However, the United States brought suit solely on Bond No. B16962.

**30**

The district court's finding that the Reinsurance and Assumption Agreement terminated the United bond is based on language in that agreement to the effect that Indiana was to assume all liability of United, such liability to be enforced directly against Indiana, "*as if a new bond were issued effective January 1, 1971.*" Although we may not have attributed the same meaning to these words were we considering the problem *de novo*, we affirm on this issue because we are not convinced that the finding made by the district court, based on its own interpretation of this language, is clearly erroneous. *See Preston v. Curtiss National Bank*, 410 F.2d 367 (5th Cir.1969); *Washington Aluminum Co. v. Pittman Construction Co.*, 383 F.2d 798 (5th Cir.1967); Fed.R.Civ.P. 52(a).

Indiana next contends that the CCC released it from liability by failing to file the proof of claim within the allowable limitation time. Paragraph 10 of the Conditions and Limitations section of Bond No. B16962 provides that the insured "shall make every effort to file . . . affirmative proof of loss . . . as soon as practicable." Indiana asserts that the government's two-year delay in filing its proof of claim constituted a breach of the CCC's obligation under this provision as a matter of law. The district court, however, held that the two-year delay was reasonable under the facts of this case. Dietsch testified by deposition that in a case such as this one, involving possible criminal violations, no administrative action may be taken until the criminal matters have been resolved by the Justice Department, and that a two-year delay is not unusual. Since the district court's finding, as supported by this testimony, is not clearly erroneous, we must reject this attack on the judgment also.

Indiana relies on yet another provision of Bond No. B16962 in arguing that it has been discharged from all liability. Included in paragraph 9 of the Conditions and Limitations section of the bond is the warranty of the CCC that "no employee, to the best of the knowledge of the Insured, has committed any fraudulent or dishonest act while in the service of the Insured or otherwise." The government concedes that a misrepresentation as to prior fraudulent acts would render the bond void. However, it does not agree with Indiana's assertion that it in fact breached the warranty or made a misrepresentation. Indiana maintains that, since Bond No. B16962 was executed after certain government officials, including a deputy administrator of the CCC, learned that Feisel had failed to report the true results of his August 28 inspection of the Timm farm, the CCC falsely represented that none of its employees had committed a prior fraudulent act. The district court, adopting the government's position, found that no misrepresentation or breach of warranty occurred because it was not until June 2, 1972, after the bond had been executed, that one of the "required officials" gained knowledge of Feisel's fraudulent act. The court was apparently referring to the persons charged with knowledge of the acts of employees under the discovery provision contained in paragraph 2(b). Dietsch was the first of these designated officials to receive notice of Feisel's misconduct. While it is true that paragraph 9 does not elucidate what is meant by "knowledge of the Insured," the district court's interpretation is reasonable and is logically derived from the language of the contract construed as a whole. Here again, we perceive no clear error in the trial court's findings.

Indiana's final contention is that the damages awarded to the United States are not supported by the evidence. Once again, we disagree. The amounts constituting the damages represent only those losses occurring subsequent to Feisel's August 28 inspection. The amount of the storage payment Timm received from the government on September 14, 1970, plus the interest thereon, is clearly recoverable. As to the losses of the pledged soybean and oat crops, the damages awarded were based on the actual sums received by Timm from the sale

of specific quantities of these commodities on October 18, 1970 and January 21, 1971. The damage element arising from the 1967 corn crop was estimated in accordance with Timm's testimony that the corn bin was one-third full on the date of inspection. Although Feisel testified that the bin may have been half full, the government's reliance on Timm's testimony in assessing its claim yielded the lower amount of damages.

Indiana raises two additional points concerning damages on appeal. It maintains that the district court awarded the government more for the loss of the 1967 soybean crop than Timm had borrowed against that collateral, and, further, that it is entitled to an offset for the $220.00 which Timm repaid to the CCC. A review of the record reveals that Indiana never mentioned or offered evidence to support these arguments during the trial. As a result, we conclude that the district court's findings as to damages are fully supported by the evidence, and are not clearly erroneous.

For the foregoing reasons, the judgment of the district court is AFFIRMED.