**Verone Marin FEHLHABER, Plaintiff-Appellee-Cross Appellant,**

v.

**Robert F. FEHLHABER, Defendant-Appellant-Cross Appellee.**

No. 79–2819.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Aug. 6, 1982.

Paul, Weiss, Rifkind, Wharton & Garrison, Mark Charles Morril, Paul Johnson Newlon, Lewis Richard Clayton, New York City, Linwood C. Cabot, Fort Lauderdale, Fla., for defendant-appellant-cross appellee.

Woodrow M. Melvin, Jr., Miami, Fla., R. Stephen Duke, Max C. Fink, Beverly Hills, Cal., for plaintiff-appellee-cross appellant.

## ON PETITION FOR REHEARING EN BANC

Before GODBOLD, Chief Judge, HATCHETT, Circuit Judge, and MARKEY [**], Chief Judge.

GODBOLD, Chief Judge:

After considering appellee's petition for rehearing en banc and appellant's response thereto, we grant rehearing and withdraw our prior opinion in this case, 669 F.2d 990 (5th Cir. 1982), and issue the following in its stead:

Appellee Verone Fehlhaber brought this diversity of citizenship action in the United States District Court for the Southern District of Florida seeking recognition and enforcement of two judgments entered against her husband in a California action for legal separation. Appellant Fred Fehlhaber seeks to collaterally attack these judgments.

### I. Facts

Verone and Fred were married in 1961 in New York. In 1967 they moved to Indian Creek Village, Florida, where they had built a house and where Fred eventually was elected mayor. Beginning in 1969 the Fehlhabers began spending several months a year in California. Fred contends that this was their vacation site; Verone contends that California was their domicile and vacations were taken in Florida. In April 1974 Verone left Fred and moved to California,

---

[**] Honorable Howard T. Markey, Chief Judge for the U. S. Court of Customs and Patent Appeals, *sitting by designation.*

and on May 17, 1974 she filed an action in California court for legal separation, spousal support, attorney's fees, and a determination of her marital property rights. Fred was personally served in Florida June 5. Six days later, June 11, Fred filed a petition in Florida for dissolution of the marriage. Verone was personally served in California.

Fred then made a special appearance in California to contest the court's exercise of personal jurisdiction over him, and lost. He did not file an answer to the complaint, took no further action in defense of the cause, and was declared in default August 19.

Fred pursued his Florida divorce action in defiance of an injunction by the California court. Verone never made an appearance in the Florida case, and the Florida court dissolved the Fehlhabers' marriage July 23, 1974, before the California court had entered any judgments. Nevertheless, the California separation proceedings continued, and in a judgment entered October 4, 1974 the court ordered legal separation and granted Verone $8,500 a month in support retroactive to August 1 and $45,000 in attorney's fees and court costs, while expressly reserving all issues regarding the division of property.

To resolve the reserved property issues Verone served on Fred, who was still in default, a request for admissions concerning the value of their marital property. Fred did not respond. The California court, acting through a judge *pro tem*, took these unanswered requests as admitted and found that the marital estate was worth $19,994,-711.14. Rather than dividing the assets in kind, in its March 12, 1976 judgment the court awarded Fred all of the property and awarded Verone a money judgment of $9,997,355.57 as a cash equalization of her share of the property, plus $30,000 for costs and attorney's fees.

With jurisdiction grounded upon diversity of citizenship, 28 U.S.C. § 1332, Verone brought an action in federal district court in Florida to enforce these two California judgments.[1] Fred, in an effort to persuade the district court not to enforce the presumptively valid judgments, based his defense upon numerous challenges to the jurisdiction of the California court and to the validity of that court's judgments. The district court rejected all of Fred's challenges and, considering itself bound by the full faith and credit clause of the U.S. Constitution, granted summary judgment for Verone and entered judgment in her favor: (1) for $516,750, consisting of $471,750 unpaid support from August 1, 1974 and $45,-000 unpaid suit costs and attorney's fees; and (2) for $12,114,991.41, consisting of the unpaid cash award of $9,997,355.57 plus interest thereon of $2,081,390.09, and the unpaid attorney's fees and costs of $30,000 plus interest thereon of $6,245.75.

On appeal Fred contends that the district court was in error for the following reasons:

(1) The California judgments are subject to collateral attack;

(2) The Florida divorce divested the California court of jurisdiction over Verone's legal separation action;

(3) The court was not empowered to award a cash offset instead of a division of property;

(4) The default procedures used violated Fred's due process rights; and

(5) The California court unconstitutionally exercised jurisdiction over Fred's property located out of state.

We first outline the requirements of full faith and credit and the rules of collateral attack, and then we examine the asserted defects in the California judgments. We conclude that the judgments are valid and immune from collateral attack except that the judgment of property division grants relief partially in excess of the amount encompassed in Verone's complaint.

1. Verone sued to enforce other judgments of the California court as well, but the district court found it unnecessary to enforce them as they overlapped the two discussed above. No cross appeal has been taken on this issue.

## II. Full faith and credit and collateral attack

■ Title 28 U.S.C. § 1738 requires that we give to the California judgments "the same full faith and credit as they have by law or usage in the courts of [California]."[2] A two-level analysis is employed to determine whether a state court judgment must be enforced under this provision. *See Williams v. North Carolina,* 325 U.S. 226, 228–29, 65 S.Ct. 1092, 1094, 89 L.Ed. 1577 (1945). Where full faith and credit applies a judgment need be given only "the same credit, validity, and effect . . . which it had in the state where it was pronounced." *Williams, supra,* 325 U.S. at 228, 65 S.Ct. at 1094. Thus, if a state court judgment is subject to collateral attack in the state that rendered it, the judgment may be collaterally attacked in federal court.[3] Therefore, Verone's contention that California law should be ignored and that Fred should be required to repair to California courts for his collateral attack is patently incorrect.

■ The requirement of full faith and credit is tempered, however, by "some basic limitations." *Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Insurance Guaranty Assoc.,* —— U.S. ——, ——, 102 S.Ct. 1357, 1365, 71 L.Ed.2d 558, 570 (1982). The chief such limitation is that full faith and credit will not be given a judgment if the rendering court did not have jurisdiction over the parties and the subject matter. *Id.*[4] Thus the requirement of full faith and credit does not initially attach if the judgment suffers jurisdictional defects that render it void. A judgment is not always open for collateral attack on the grounds of lack of jurisdiction, however. Federal principles of res judicata and collateral estoppel apply even to jurisdictional issues. *Id.* at ——, 102 S.Ct. at 1366; *see* note 27 *infra.*

To summarize this two-level analysis, collateral attack of the California judgments might occur under two sets of principles. Under federal principles we determine whether the judgments possess the requisite validity to apply full faith and credit. If full faith and credit applies we look to state law to determine *how much* credit they deserve.[5] Conversely put, the California judgments are not to be enforced if they are subject to successful collateral at-

---

2. Section 1738 imposes on the federal courts the same full faith and credit requirements imposed on the state courts by the U.S. Const. art. IV, § 1. *See Ultracashmere House, Ltd. v. Meyer,* 664 F.2d 1176 (11th Cir. 1981); *Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Insurance Guaranty Assoc.,* —— U.S. ——, —— n.9, 102 S.Ct. 1357, 1365 n.9, 71 L.Ed.2d 558, 570 n.9 (1982) (§ 1738 is "the statutory codification of this constitutional guarantee").

3. This was the holding in *New York ex rel. Halvey v. Halvey,* 330 U.S. 610, 614–15, 67 S.Ct. 903, 905–06, 91 L.Ed. 1133 (1947):

    [A] judgment has no constitutional claim to a more conclusive or final effect in the State of the [enforcing] forum than it has in the State where rendered.

    . . . .

    [I]t is clear that the State of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered.

    . . . .

    It is not shown that the New York court in modifying the Florida decree exceeded the limits permitted under Florida law. There is

therefore a failure of proof that the Florida decree received less credit in New York than it had in Florida.

    *See also Ford v. Ford,* 371 U.S. 187, 192, 83 S.Ct. 273, 276, 9 L.Ed.2d 240 (1962) ("the Full Faith and Credit Clause . . . would require South Carolina to recognize the Virginia order as binding only if a Virginia court would be bound by it"); *Sherrer v. Sherrer,* 334 U.S. 343, 351, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948) (full faith and credit must be accorded where the judgment is not susceptible to collateral attack in courts of the state where rendered); *Hazen Research, Inc. v. Omega Minerals, Inc.,* 497 F.2d 151, 153 (5th Cir. 1974); *Yale v. National Indemnity Co.,* 602 F.2d 642, 644 (4th Cir. 1979).

4. Another limitation, discussed below in part IV B(2), is that the judgment must comply with the requirements of due process. *See also* note 6 *infra.*

5. Unfortunately California does not have a procedure by which this court can certify to its courts the dispositive questions of state law that must be answered in this case.

tack either under the "basic limitations" of federal law or under California law.[6]

### III. The effect of the prior Florida divorce

■ During the pendency of Verone's California suit for legal separation, and before any judgment was entered, Fred obtained in Florida a presumptively valid divorce.[7] Subsequently the California court entered a judgment of legal separation and entered the two monetary judgments concerning spousal support and property rights sought to be enforced here. Fred contends that, despite the fact that the Florida decree did not purport to adjudicate support and property rights, the Florida decree had the effect under California law of depriving the California court of further jurisdiction over Verone's legal separation action. We assume arguendo that the prior Florida decree is a matter for collateral attack[8] and find that the Florida divorce did not affect the power or jurisdiction of the California court over the judgments enforced here.

■ In California "prior dissolution of the marriage is . . . a complete defense to . . . an action [for legal separation]." *De-Young v. DeYoung*, 27 Cal.2d 521, 527, 165 P.2d 457, 460 (1946) (Schauer, J., concurring); *Hudson v. Hudson*, 52 Cal.2d 735, 344 P.2d 295, 299–300 (1959); *Patterson v. Patterson*, 82 Cal.App.2d 838, 187 P.2d 113, 115

6. Recent Supreme Court authority suggests a possible change in analysis from a two-step inquiry to a unified theory of full faith and credit. In its prior decisions the Court has stated that a judgment rendered without subject matter jurisdiction is not given full faith and credit; however, principles of res judicata apply to jurisdictional issues as well as to the merits, and if there has been a full and fair litigation of jurisdictional issues, or even a full and fair *opportunity* to litigate such issues, then possible jurisdictional defects are not considered. *See, e.g., Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Insurance Guaranty Ass'n*, — U.S. —, —, & n.16, 102 S.Ct. 1357, 1366 & n.16, 71 L.Ed.2d 558, 571–73 & n.16 (1982); cases discussed in note 27 *infra*. This initial federal inquiry into subject matter jurisdiction found in *Underwriters* appears to be abandoned in the Court's decision rendered two months later in *Kremer v. Chemical Construction Corp.*, — U.S. —, —, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982). In *Kremer* the Court explained that the heretofore unannounced source of the "full and fair opportunity" proviso is the due process clause of the Constitution and not federally imposed principles of res judicata. The analysis in *Kremer* has the effect of eliminating the initial inquiry into subject matter jurisdiction because the only concern is whether requirements of due process were met. If there was due process the judgment is enforceable despite a lack of jurisdiction; if due process was not afforded then the judgment is not enforceable regardless of the existence of jurisdiction, *see* part IV B(2) *infra*. Therefore, the existence of subject matter jurisdiction is as irrelevant to enforcement as is an error on the merits. This approach reduces full faith and credit analysis to only an inquiry into what effect a judgment has in its rendering state, for a state is not allowed to give effect to a judgment rendered in violation of due process.

To summarize, in *Underwriters* and previous cases the Supreme Court has stated that "[i]f [the rendering] court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given, . . . [but] principles of res judicata apply to questions or jurisdiction as well as to other issues," limiting the scope of review over jurisdiction. — U.S. at —, 102 S.Ct. at 1365–66, 71 L.Ed.2d at 570–71. However, in *Kremer* the Court stated resolutely that "§ 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments," — U.S. at —, 102 S.Ct. at 1897, and implied that due process is the only federally-imposed limitation on full faith and credit.

Because the approach we outline in text has explicit Supreme Court approval, *see, e.g., Williams v. North Carolina*, and because it is not necessary to our decision to resolve the tension in the Supreme Court's cases, *see* part IV B(2) & n.22 *infra*, we continue to employ the traditional two-step analysis.

7. Verone was personally served and does not question the validity of the divorce.

8. The district court construed Fred's argument to be one that the California court failed to give full faith and credit to the Florida decree, and it held that this defense was not grounds for collateral attack. We differ in our analysis because we do not view Fred's contention as a mere full faith and credit defense that he might have raised in California. Because the Florida decree concerns only the marital res, and the California judgments sought to be enforced here concern only property and support rights, the California judgments in no way deny effect to the Florida decree. Instead Fred contends that California law gives a jurisdictional impact to the prior Florida divorce.

(1947). This requirement of a marriage is a "jurisdictional prerequisite." *Colbert v. Colbert*, 28 Cal.2d 276, 169 P.2d 633, 635 (1946); *Knox v. Knox*, 88 Cal.App.2d 666, 199 P.2d 766, 773 (1948). Fred argues, therefore, that the California court was without subject matter jurisdiction to enter any of its judgments.

This argument reasons too broadly. The rationale for the rule that marriage is a prerequisite to such actions is that a prior divorce moots the prayer for legal separation or divorce. *Hudson*, 344 P.2d at 299 (divorce). This does not mean, however, that the prayers for relief concerning the financial matters incident to marriage are mooted. Under the concept of "divisible divorce" a prior divorce does not automatically adjudicate property and support rights. *See* Comment, *Post-Dissolution Suits to Divide Community Property: A Proposal for Legislative Action*, 10 Pac.L.J. 825, 827 (1979). Thus, in *Hudson, supra*, where the husband obtained a Nevada divorce during the pendency of the wife's California divorce action, the California Supreme Court held that, although the wife's prayer for divorce was mooted, "her prayer for permanent alimony remains to be adjudicated." 344 P.2d at 299. Likewise, in *Leff v. Leff*, 25 Cal.App.3d 630, 634, 102 Cal.Rptr. 195, 204 (1972), the court held that an intervening Nevada divorce did not "affect Wife's right to secure alimony or to share in the alleged California community property.... [T]hese issues were subject to litigation and adjudication in the California proceeding; and they were raised by the pleadings." There is no rationale or authority for distinguishing these cases on the ground that the California action we are concerned with was one for legal separation instead of divorce. In both types of actions the marital res is at issue as well as property and support rights. Prior adjudication elsewhere of the marital res does not affect the financial matters.

Fred next contends that although Verone's prayer for determination of her property rights might have survived the Florida divorce, it did so only as an action in equity and not as a statutory action under the Family Law Act, Cal. Civil Code § 4000 *et seq.*, because a prayer for legal separation or divorce is a statutory prerequisite to a determination of property rights under the Act, *see id.* at § 4800. The distinction between an equitable and a statutory action is significant because the court's nonstatutory powers of property division are apparently more constrained. *See Buller v. Buller*, 62 Cal.App.2d 687, 145 P.2d 649 (1949) (no power in nonstatutory action to award an offset; division in kind is mandatory).[9]

The argument that a statutory action for determination of property rights depends on the pendency of a proceeding for dissolution of marriage or legal separation was squarely rejected in *In re Marriage of Lusk*, 86 Cal.App.3d 228, 234, 150 Cal. Rptr. 63, 67 (1978). There the trial court dissolved the party's marriage and entered a judgment reserving jurisdiction over all other matters (custody, support, property division, attorney's fees). The wife challenged this bifurcation of issues on the ground that it would deprive the court of statutory jurisdiction. Although the court might have relied solely on the specific authorizations under the California Family Law Act and its rules to reserve jurisdiction over these ancillary matters, Cal.Civil Code § 4801(a); Cal. Family Law Rules 1287, it reasoned broadly:

> [W]ife contends that adjudication of the dissolution of the marriage would leave the trial court without jurisdiction to make a subsequent order for her support under [the Family Law Act] or ex parte protective orders [under the Act] in respect to the disposition or alienation of property or restraining husband from molesting or disturbing her or the minor children.... The argument is that the language of those code sections indicate

---

**9.** This was the reasoning in the original opinion. 669 F.2d 990, 997–98 (withdrawn). We now depart from it because of the California

precedent of *In re Marriage of Lusk*, 86 Cal. App.3d 228, 150 Cal.Rptr. 63 (1978), cited to us for the first time in the petition for rehearing.

that such orders may be made only during the pendency of a proceeding for dissolution of marriage and that once the marriage is dissolved, no proceeding will any longer be pending for dissolution of the marriage. We are not so persuaded. In the first place, ... [i]f the court expressly reserved jurisdiction over such matters, its jurisdiction would not be exhausted.... Secondly, if an action is commenced as one for dissolution of the marriage and involves issues of custody, support, property division and attorney fees, *the fact that the marriage is dissolved does not necessarily require the conclusion that the action is no longer being prosecuted under [the Act]. It would be entirely reasonable to conclude that the action continues to be prosecuted pursuant to [the Act].*

150 Cal.Rptr. at 67. We see no persuasive grounds for not applying this reasoning here. That it might be viewed as dictum is irrelevant, for, where we are bound by state law, considered dictum is to be followed as well as a precise holding. *Mooney Aircraft Inc. v. Donnelly*, 402 F.2d 400, 405 (5th Cir. 1968). Also the fact that in *Lusk* the prior divorce was rendered by the same court in which the property and support issues were pending does not distinguish the case from this case where the prior divorce was a foreign one. In each case the argument advanced is identical, that once the marital res is adjudicated there is no longer statutory jurisdiction under the Family Law Act.

■ We therefore must conclude that the law in California is that if a marriage exists when an action is commenced under the Family Law Act, the subsequent dissolution of that marriage does not divest a California court of its statutory jurisdiction over property and support issues, even though the court might not have expressly reserved jurisdiction over those matters.

## IV. The property division judgment

The property division judgment was a cash award of $9,997,355.57, arrived at as follows. After Fred had been declared in default Verone submitted to Fred a request for admissions concerning the value of their marital estate subject to division under California's community property laws. Fred did not respond. Verone moved to have these unanswered requests taken as admitted. The trial court, acting through a judge *pro tem*, granted this motion and thus found the marital estate to be valued at $19,994,711.14. Rather than dividing the assets in kind or offsetting one asset for another, the court awarded all of the assets to Fred and granted Verone a cash judgment of one-half this amount as a cash offset in lieu of her entire share of the marital estate. Fred contends that the property judgment was grossly inflated because he is worth less than $7 million. He seeks to attack the judgment on grounds that we divide into three groupings: (1) the cash offset was invalid as exceeding the statutory powers of the California court and as exceeding the prayer for relief in Verone's complaint; (2) the method of proof was so defective as to deny due process; and (3) the California court's exercise of jurisdiction over property located out of state was unconstitutional because Fred was not domiciled in California.

### A. Cash offset

■ In dividing a marital estate California courts are empowered "where economic circumstances warrant" to "award any asset to one party on such conditions as it deems proper to effect a substantially equal division of the property." Cal.Civil Code § 4800(b)(1). For example, one spouse might be awarded the television on the condition that the other keep the microwave, if the two are substantially of equal value. The court might also award an asset to one spouse and award the other spouse a monetary judgment as a cash equalization. *See, e.g., Weinberg v. Weinberg*, 67 Cal.2d 557, 432 P.2d 709, 63 Cal.Rptr. 13, 17–18 (1967); *In re Marriage of Clark*, 80 Cal. App.3d 417, 145 Cal.Rptr. 602, 605 (1978). The California Supreme Court has emphasized the broad range of discretion which § 4800 vests in the trial court. *In re Marriage of Connolly*, 23 Cal.3d 590, 603, 153 Cal.Rptr. 423, 430, 591 P.2d 911, 918 (1979)

**1024**

("considerable discretion," "a maximum degree of allowable flexibility").

Fred argues with some force that awarding a cash judgment as Verone's entire share of the marital estate is unprecedented in California law and that there was a total absence of findings of "economic circumstances" warranting any offset as required by § 4800. Conceding that the trial court may have committed egregious error, we cannot agree that the California court exceeded its powers or jurisdiction in granting an entire cash offset given the discretionary terms in which § 4800(b)(1) is viewed by the California law.[10] Nor does the failure to find "economic circumstances" render the judgment subject to collateral attack. In *Badillo v. Badillo*, 123 Cal.App.3d 1009, 1012, 177 Cal.Rptr. 56, 58 (1981), the court held concerning an alleged unequal division of property that "even though the offset failed to comply with Civil Code section 4800 ... the error ... is not void or subject to collateral attack." An analogous case is *Armstrong v. Armstrong*, 15 Cal.3d 942, 544 P.2d 941, 126 Cal.Rptr. 805 (1976) where the court refused to allow collateral attack of a judgment that permitted a husband to meet his child support obligations by relying on his children's trust funds, even though such a judgment is authorized only upon a finding that the husband did not have sufficient resources of his own, and such a finding was lacking. Similarly here, the lack of the requisite finding of "economic circumstances" does not render the judgment void.

■ Fred also contends that, assuming the California court acted within its statutory powers, no notice was given in the complaint that a cash offset was sought and therefore the judgment rendered in default is void. California law, like federal, pro-

vides that a default judgment "cannot exceed that which ... [was] demanded in [the] complaint." Cal.Code Civ.Pro. § 580; see F.R.Civ.P. 54(c). In California a failure to comply with this requirement renders the judgment void and subject to collateral attack. *Burtnett v. King*, 33 Cal.2d 805, 205 P.2d 657 (1949) (holding no jurisdiction to divide community property where there was no demand for such relief). The policy supporting this rule is that a defendant in default "must be given notice of what judgment may be taken against him." 205 P.2d at 658.

Applying this rule, the court in *Wilkinson v. Wilkinson*, 12 Cal.App.3d 1164, 91 Cal.Rptr. 372 (1970) held that where the complaint prayed "that the community property ... be awarded to the [wife]," a default judgment awarding all of the community property to the husband and awarding the wife a sum of money in lieu of her interest in the community property was void and outside the court's jurisdiction. 91 Cal.Rptr. at 373–74. The court reasoned that "the husband had a right to ... assume that the court at worst would do no more than award all of the [property] to the wife." *Id.*

■ Despite the close similarity of *Wilkinson* it is not controlling here. In *Wilkinson* the wife prayed specifically that the community property be awarded to her. Here Verone prayed broadly that "property rights be determined as provided by law" and that the court "render such judgments ... as are appropriate." As discussed above, the trial court was vested with broad discretion in effecting an offset, and so, absent a restrictive prayer for relief such as that in *Wilkinson*, Fred was put on notice that he was potentially subject to a monetary judgment.[11] The kind of relief award-

10. Here we address this defect in jurisdictional terms. We also reject below the contention that the lack of evidence of economic circumstances denied Fred due process. *See* part IV B(2), *infra*.

11. Fred observes that when Verone moved for judgment on the reserved property issues she asked the court more specifically to "divide the

property equally among the parties." Had this been an amendment to her complaint *Wilkinson* might apply. It was, however, merely a motion which the California court chose not to grant, and thus when the marital property issues were determined by the California court it was still operating under the broad prayer in the original complaint.

ed was therefore within the prayer for relief.

■ The cash judgment of $9,997,355.57 exceeded, however, the amount of relief encompassed by the complaint. Section 580, in requiring that a default judgment cannot exceed the prayer for relief, limits the judgment in the amount of relief as well as the kind of relief. *Becker v. S.P.V. Construction Co., Inc.*, 27 Cal.3d 489, 493–94, 162 P.2d 915, 917, 165 Cal.Rptr. 825, 827 (1980). Section 580 is "designed to insure fundamental fairness" through notice to the defaulting party of the amount of the judgment that may be taken against him. *Id.*, 162 P.2d at 918, 165 Cal.Rptr. at 828. One aspect of fundamental fairness, in the view of the California Supreme Court, is "that defaulting defendants should not be subject to damages in excess of an amount specifically set out in the complaint. . . . If no specific amount of damages is demanded, the prayer cannot insure adequate notice of the demands made upon the defendant." *Id.*, 162 P.2d at 917–18, 165 Cal.Rptr. at 827–28. Thus, the California Supreme Court has interpreted § 580 to require that unless a specific sum is contained in the complaint, a monetary default judgment is subject to collateral attack. *Id. See also Petty v. Manpower, Inc.*, 94 Cal.App.3d 794, 797, 156 Cal.Rptr. 622, 624 (1979) ("It would appear that where no specific amount of damages is requested that any amount would be in excess of that demanded."); *Ludka v. Memory Magnetics International*, 25 Cal.App.3d 316, 323, 101 Cal.Rptr. 615, 619 (1972) (cited with approval in *Becker, supra*).

■ Verone's general prayer that "property rights be determined" and that the court "render such judgments as are appropriate" does not meet this requirement of specific notice of the amount of cash judgment that Fred was subject to.[12] Allegations elsewhere in the complaint cure this defect to a certain extent. In her complaint Verone alleged that the marital estate subject to division consisted of property valued "in excess of $15,000,000.00." This specification in the body of the complaint meets the requirements of Cal.Code Civ.Pro. § 580. *Thornson v. Western Development Corp.*, 251 Cal.App.2d 206, 212, 59 Cal.Rptr. 299, 303 (1967) (cited with approval in *Becker, supra*, 27 Cal.3d at 494). Specifying that the value of the marital estate is "in excess of" $15 million does not fully encompass the amount awarded in the property division judgment, however, for that award was based on a valuation of the estate at $19,994,711.14. Verone is limited in her recovery to the "largest amount specifically requested in the complaint." *Becker, supra*, 27 Cal.3d at 493. In *Becker*, the plaintiff prayed for compensatory damages "in excess of $20,000." The California Supreme Court held that the maximum amount of compensatory damages that could be awarded was $20,000, and, following its rules of collateral attack, reduced the judgment to this amount. Likewise, here, the largest cash judgment that Fred could have anticipated from the complaint

12. We reject Verone's contention that the rule in *Becker* applies only in contract and tort actions and not in actions under the Family Law Act. It is true that the court in *Becker* relied in part on Cal.Code Civ.Pro. § 410.25 (providing that "if the recovery of money . . . be demanded, the amount thereof shall be stated [in the complaint]"), which does not apply in cases under the Family Law Act, Cal.Code Civ. Pro. § 429.40; California Rules of Court, Rule 1215. But the court also relied on Cal.Code Civ.Pro. § 585(b) (a default judgment may be awarded only "for such sum (not exceeding the amount stated in the complaint)"), which does apply to family law cases. Moreover, the court's reasoning was quite broad, finding the requirement of a specific prayer for damages from the need for "fundamental fairness" enforced by § 580. Therefore, nothing in the *Becker* court's reasoning suggests that its holding would not apply to a cash judgment in lieu of an award of community property assets. (We intimate no view of the requirements of § 580 where the property judgment divides the assets in kind, or offsets one asset for another.) Finally, giving notice of the amount of a cash property division judgment is not inconsistent with the Family Law Rules, for the form pleading provided therein allows the petitioner to specify the kind, amount, and value of property subject to division. California Rules of Court, Rule 1281; *see* Rule 1285.55 (adopted Jan. 1, 1980).

was $7,500,000, one half of $15,000,000. The judgment in excess of this is open to collateral attack in California and subject to modification. Therefore, the principal amount of the judgment on property rights may be enforced only up to $7.5 million.[13]

## B. Method of proof

■ Where damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved. *Uva v. Evans*, 83 Cal.App.3d 356, 147 Cal.Rptr. 795, 800 (1978) ("damages must be proved in the trial court before the default judgment may be entered"); *Petty v. Manpower, Inc.*, 94 Cal.App.3d 794, 798, 156 Cal.Rptr. 622, 624 (1979) ("damages except when fixed by contract must be proved"); Cal.Code Civ.Pro. § 585(b) (procedure for default judgment: "the court shall hear the evidence offered by plaintiff, and shall render judgment ... for such sum ... as appears by such evidence to be just"). Fred contends that the sole method of proof of the value of the marital estate was that the California court took his failure to respond to Verone's request for admissions as being an admission of the facts stated therein. As Fred describes California law, once he was in default he no longer had a right to appear in court to respond to the request for admissions, *see Jones v. Moers*, 91 Cal.App. 65, 266 P. 821, 822 (1928), and therefore there was an entire lack of proof of the amount of relief. Assuming the truth of these contentions, this procedure is not grounds for collateral attack under either California or federal law.

## (1) California law

■ Despite the mandatory nature of the requirement in Cal.Code Civ.Pro. § 585(b) that proof be taken to justify the amount of a default judgment, the requirement is not "jurisdictional" under California law and therefore does not subject an irregular default judgment to collateral attack.[14] The rule in California is that generally failure of the court to comply with the requirements of § 585(b) constitutes "at most but an erroneous exercise of jurisdiction ... [and] not an absence of jurisdiction; ... [a] judgment entered by a court [not in conformity with § 585(b) ] is therefore merely voidable, and not void, and can only be attacked by appeal or motion made within six months thereafter." *Baird v. Smith*, 216 Cal. 408, 14 P.2d 749, 751 (1932). This general statement holds true for § 585(b)'s requirement of proof. An analogous provision is Cal. Civil Code § 4511, which requires in divorce proceedings that "no decree of dissolution can be granted upon ... default ... but the court shall ... require proof of the grounds alleged." In *Hamblin v. Superior Court*, 195 Cal. 364, 233 P. 337, 341 (1925), the court held that "a failure to comply with the requirements of this section would not render the judgment void" but "results in mere error, correctible only by means of a direct attack." Moreover, outside of the default context the California Supreme Court has twice stated that even a judgment entered without a trial cannot be attacked collaterally. *Gray v. Hall*, 203 Cal. 306, 313, 265 P. 246, 251 (1928); *Ex Parte Bennett*, 44 Cal. 84, 87 (1872).

**13.** This holds only with respect to the cash offset judgment. The judgments for alimony, attorney's fees, and costs are valid despite the failure to specify in the complaint how much was sought for these items. In *Horton v. Horton*, 18 Cal.2d 579, 116 P.2d 605 (1941), a collateral attack was made on support, attorney's fees, and costs judgments rendered in default in a legal separation action. The husband contended that the judgments were void under § 580 because the wife "did not ask for ... any designated amount of attorney fees, or for any specified sum for [support]." The court held that specific amounts did not have to be designated for these items because "the amount to be granted is largely within the discretion of the trial court" and therefore the judgments were "directly responsive to the wife's prayer for reasonable sums for support, ... attorney fees and costs." *Id.*, 116 P.2d at 606–07. Moreover, § 580 does not require that alimony even be requested, *see Burtnett v. King, supra*, 205 P.2d at 659, and thus could not require that the amount of alimony be specified.

**14.** A failure of proof may be raised on appeal from the default judgment, however. *Uva v. Evans, supra*, 147 Cal.Rptr. at 799–800. As discussed below, although Fred was served with the property judgment, he failed to appeal or to move to set it aside.

### (2) Federal principles

Under federal law, Fred contends that the total lack of competent proof of the value of the marital estate is grounds for denying full faith and credit because the lack of proof violates due process of law. A judgment rendered in violation of due process is indeed void and therefore need not be enforced under 28 U.S.C. § 1738 or the full faith and credit clause of the Constitution. *Kremer v. Chemical Construction Corp.,* —— U.S. ——, —— & n.24, 102 S.Ct. 1883, 1897 & n.24, 72 L.Ed.2d 262 (1982) ("A state may not grant preclusive effect ... to a constitutionally infirm judgment and other state and federal courts are not required to accord full-faith-and-credit to such a judgment."); *Wetmore v. Karrick,* 205 U.S. 141, 149, 27 S.Ct. 434, 436, 51 L.Ed. 745 (1907) (full faith and credit does not apply to a judgment rendered without jurisdiction "or otherwise wanting in due process of law"); *Simer v. Rios,* 661 F.2d 655, 663 (7th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); *Compton v. Alton Steamship Co.,* 608 F.2d 96, 106 (4th Cir. 1979); *VTA, Inc. v. Airco, Inc.,* 597 F.2d 220, 224–25 (10th Cir. 1979); *O'Boyle v. Bevil,* 259 F.2d 506, 516 (5th Cir. 1958), *cert. denied,* 359 U.S. 913, 79 S.Ct. 590, 3 L.Ed.2d 576 (1959) (Cameron, J., concurring); *Bass v. Hoagland,* 172 F.2d 205, 209 (5th Cir.), *cert. denied,* 338 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494 (1949) ("a judgment, whether in a civil or criminal case, reached without due process of law is without jurisdiction and void, and attackable collaterally ... by resistance to its enforcement if a civil judgment"); 1B *Moore's Federal Practice* ¶ 0.406[2], p. 905; 7 *id.* at ¶ 60.25[2], p. 309–11.

The due process requirements in a civil case where only property interests are at stake are, of course, much less stringent than in a criminal case involving life and liberty interests. Thus ordinarily all that due process requires in a civil case is proper notice and service of process and a court of competent jurisdiction; procedural irregularities during the course of a civil case, even serious ones, will not subject the judgment to collateral attack. *See Windsor v. McVeigh,* 93 U.S. 274, 282, 23 L.Ed. 914 (1876); 7 *Moore's, supra,* at ¶ 60.25[2], p. 309–10. However, "a departure from established modes of procedure [can] render the judgment void," *Windsor, supra,* 93 U.S. at 283, where the procedural defects are of sufficient magnitude to constitute a violation of due process, or, as sometimes more circularly put, where the defects are "so unfair as to deprive the ... proceedings of vitality," *Eagles v. U. S.,* 329 U.S. 304, 314, 67 S.Ct. 313, 319, 91 L.Ed. 308 (1946), or where the procedural irregularities are serious enough to be deemed "jurisdictional," *Yale v. National Indemnity Co.,* 602 F.2d 642, 644 (4th Cir. 1979); *Recent Cases,* 62 Harv.L.Rev. 1400, 1401 (1949). *See generally Restatement of the Law of Judgments* § 8 (1942).

The leading case allowing collateral attack of a default judgment for procedural errors during the course of a jurisdictionally proper proceeding is *Bass v. Hoagland,* 172 F.2d 205 (5th Cir.), *cert. denied,* 359 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494 (1949), *noted in Recent Cases,* 62 Harv.L.Rev. 1400. In *Bass* the plaintiff sued to enforce a default judgment obtained in another federal court. In the original trial court the defendant appeared, answered, and requested a jury trial. Defense counsel then withdrew. On the day of trial defendant was not present. The trial judge treated the defendant in default because of the earlier withdrawal of his counsel and entered judgment for the plaintiff in the precise amount requested in his complaint, without a jury trial and apparently without taking any evidence. Defendant was not aware of the trial date, was given no notice prior to the entry of the default judgment, and was fraudulently not informed of the judgment until more than two years after it was entered. The court held that the combination of these errors resulted in a denial of due process.[15]

15. Professor Moore rejects a reading of *Bass* under which collateral attack was allowed for one of the procedural errors in favor of a read-

The alleged procedural errors in the instant case, although they are serious and "seem to present a case of injustice," *Bass, supra,* 172 F.2d at 208, do not approach the level of irregularity found in *Bass* to constitute a due process violation. In *Bass* the initial entry of default was held invalid because it was entered for improper grounds. *Id.* at 209–10.[16] This alone might warrant collateral attack. *See Hovey v. Elliott,* 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897) (holding default judgment subject to collateral attack where entered improperly as a punishment for contempt); *Windsor v. McVeigh,* 93 U.S. 274, 23 L.Ed. 914 (1876) (same for default entered because defendant was a confederate). Here Fred was properly found in default for failing to answer. The *Bass* court also found that, even if entry of default was proper, entry of the default judgment was not preceded by three days notice as required by federal rules. *Id.* at 209, 210. In this case Fred was notified prior to the determination of the property issues. Also, unlike the defendant in *Bass,* Fred was served with the property division judgment and therefore might have appealed it or moved to set it aside under the more lenient "six month" rules. *See* Cal.Code Civ.Pro. § 473 (allowing relief from judgment within six months for, *inter alia,* surprise and excusable neglect). Finally, in *Bass* the court gave considerable emphasis to the denial of the defendant's Seventh Amendment right to a jury trial. 172 F.2d at 209, 210. Unlike in *Bass,* Fred does not claim a constitutional right to a jury trial in the California state court, nor did Fred make a demand for a jury trial.

The only respect in which this case and *Bass* are similar is the allegation that there was a total lack of evidence to support the amount of the award.[17] This is not a sufficient irregularity under federal principles to subject the California judgment to collateral attack. First, there is no indication from *Bass* that the lack of evidence on damages alone would have subjected the judgment to collateral attack. This was one of many defects recited by the court as leading to the conclusion that due process was not afforded. *See* 172 F.2d at 209. Second, regardless of what due process requires where a defendant has not defaulted,[18] the Supreme Court has stated that no hearing at all is required by the due process clause when a defendant is in default. *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971).[19] Because Fred was properly held in default no hearing on damages was required by procedural due process; therefore any deficiencies in the proof of damages did not deny Fred the process he was due. Finally, Fred was not entirely foreclosed from presenting proof of

---

ing that only the combination of errors opened the default judgment to attack:

> Implicit in the court's opinion is the belief that the combined procedural irregularities had resulted in injustice.... It is believed that the case does not stand for the bare proposition that [the denial of a jury trial was] so fundamental that it is the basis for a collateral attack. Certainly the case cannot be supported if that is what it stands for.

5 *Moore's, supra,* at ¶ 38.19[3], p. 174.

**16.** The default was entered because of the withdrawal of Bass's counsel, not because of the nonappearance or default of Bass himself.

**17.** Fred contends that there was no evidence of the value of the marital estate and no evidence to support a finding of economic necessity to award a cash offset.

**18.** Some courts are of the view that due process is met even though there is an entire lack of evidence, *see* 49 C.J.S. Judgments § 432 (1947) (collecting state cases); part IV B(1) *supra.* The Supreme Court has indicated, however, that some civil judgments may be collaterally attacked where "there was no evidence to support the order." *Eagles, supra,* 329 U.S. at 312, 67 S.Ct. at 317. This statement was made in the context of cases involving liberty interests (military induction; deportation) and attackable by writ of habeas corpus.

**19.** "Due process does not ... require that the defendant in every civil case actually have a hearing on the merits. A state can, for example, enter a default judgment against a defendant who, after adequate notice, fails to make a timely appearance...."

*Bass* does not conflict with this view, for there the defendant had not defaulted but was erroneously treated in default for the withdrawal of his counsel.

the value of his estate. Even assuming he was barred from appearing at the damage hearing while in default, he might have moved to vacate the default[20] or to set aside the default judgment, and he might have appealed the default judgment. *See* note 14 *supra.*

The holding in *Bass* is a rare exception to the normal rules of collateral attack. 6 *Moore's, supra,* at ¶ 55.09, p. 204 ("an occasional atypical case" not establishing a general rule); 7 *id.* at ¶ 60.25[2], p. 309–11. While the principle of *Bass* has full effect in this court, *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), it does not apply on this set of facts.[21]

No lesser ground than a judgment rendered in violation of due process will suffice for collateral attack in this case. Fred contends that collateral attack is allowed in order to avoid manifest injustice. *Garner v. Giarrusso,* 571 F.2d 1330, 1336 (5th Cir. 1978); *Tipler v. E. I. duPont de Nemours and Co.,* 443 F.2d 125, 128 (6th Cir. 1971). The authorities cited for this proposition all arise in the administrative agency context, however, where principles of res judicata do not apply with as great a rigor but instead "the traditional doctrine . . . [is] qualified or relaxed to whatever extent is desirable for making it a proper and useful tool for administrative justice." K. Davis, *Administrative Law Treatise* § 18.03, p. 553 (1958). In civil court cases, while there might be isolated instances where the principles of res judicata do not apply with full force, *see* 1B *Moore's, supra,* at ¶¶ 0.405[11], [12], there is no general equitable exception to the doctrine, *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103, 110 (1981), and the facts of this case do not fall within any of the developed exceptions, *see Key v. Wise,* 629 F.2d 1049, 1067 (5th Cir. 1980), *cert. denied,* —— U.S. ——, 102 S.Ct. 682, 70 L.Ed.2d 647 (1981); *compare* 1B *Moore's, supra,* at ¶¶ 0.405[11], [12].[22]

## C. Jurisdiction over quasi-community property

Virtually all of the property that was the basis for the property division judgment was located outside of California. The California court exercised jurisdiction to divide the property under California's "quasi-community property" statute, which treats as community property all property acquired by a spouse while domiciled elsewhere that would have been community property if the spouse had been domiciled in California at the time of acquisition. Cal. Civil Code § 4803. Fred contends that under the laws of Florida, where he claims to be domiciled, this property is not subject to division and that therefore application of California's quasi-community property statute was unconstitutional because he has insufficient contacts with the state.

The district court did not address this contention so we must determine whether it was adequately presented below. This de-

---

**20.** Fred was given notice by Verone that she intended to request the California court to accept the unanswered requests for admissions as admitted.

**21.** Fred also places reliance on *Compton v. Alton Steamship Co.,* 608 F.2d 96, 105–107 (4th Cir. 1979), holding void a default judgment because "the plaintiff's express allegations, reinforced . . . by plaintiff's direct proof at the damages hearing established indisputably that he was not entitled to recover . . . ." The instant case is not as egregious. Although part of the judgment exceeded the amount prayed for, and to that extent we have granted Fred relief, *see* part IV A, *supra,* the remainder of the judgment was within the complaint. Moreover, the evidence in the California proceeding did not "indisputably" establish that Verone was not entitled to recover. *See also* note 22 *infra.*

**22.** The discussion in text explains that possible exceptions to full faith and credit do not apply on the facts of this case. Moreover, even if the suggested exceptions were applicable on these facts, the exceptions may not be relevant to state judgments under a full faith and credit analysis. These exceptions were developed in the context of the enforcement of *federal* judgments, and, as discussed in note 6, *supra,* federal principles of res judicata may not be relevant to state judgments. In short, not every defect that renders a judgment "void" under federal law may suffice to deny effect to a *state* judgment under the full faith and credit clause of § 1738.

fense was first mentioned obliquely in Fred's answer to the supplemental complaint,[23] and again mentioned in his "motion for new trial" filed after the district court's entry of summary judgment for Verone.[24] For several reasons, neither instance was sufficient to preserve the issue for appeal.

First, the defense concerning quasi-community property mentioned in Fred's answer to the supplemental complaint was abandoned. At no time during the lengthy district court proceedings did Fred develop this argument in his briefs to the court, through oral argument, or through citation of authority. In particular, the point was not even mentioned in the two briefs filed by Fred in opposition to summary judgment. Failure to brief and argue an issue is grounds for finding that the issue has been abandoned. *See U. S. v. Indiana Bonding & Surety Co.*, 625 F.2d 26, 29 (5th Cir. 1980) (defense waived even though listed in pretrial order because no evidence presented and not mentioned in proposed findings of facts and conclusions of law); *Tedder v. F. M. C. Corp.*, 590 F.2d 115 (5th Cir. 1979) (point abandoned on appeal where raised in statement of issues but not addressed elsewhere in brief). We do not rest on this default alone, however, for Fred did not include this defense in his pretrial stipulation of the issues to be determined by the court. The district court ordered the parties to reach an agreed pretrial stipulation. Fred filed his unilaterally and Verone accepted with some changes not relevant here. We find, then, as in *Tomlinson v. Lefkowitz*, 334 F.2d 262, 263 (5th Cir. 1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965) that:

> [t]he parties agreed by stipulation . . . what issues of fact and law were to be

decided by the trial court. This point was not included in those issues remaining open for consideration. Thus the appellant should not be permitted to raise the issue here for the first time.

*See also Automated Medical Laboratories, Inc. v. Armour Pharmaceutical Co.*, 629 F.2d 1118, 1123 (5th Cir. 1980) (" 'When the defendant has waived his affirmative defense by failing to . . . have it included in a pretrial order of the district court that superseded the pleadings, he cannot revive the defense in a memorandum in support of a motion for summary judgment.' "); F.R. Civ.P. 16 (pretrial order "when entered controls the subsequent course of the action").

Second, the thirteenth-hour raising of the issue in Fred's motion for a new trial will not cure these defaults. Again, the point was not briefed, nor was it mentioned in the hearing the court held on the motion. Moreover, an argument first raised in a postjudgment motion "is simply too late." *Excavators & Erectors, Inc. v. Bullard Engineers, Inc.*, 489 F.2d 318, 320 (5th Cir. 1973). *Accord Hanson v. Denckla*, 357 U.S. 235, 243–44, 78 S.Ct. 1228, 1234, 2 L.Ed.2d 1283 (1958) (argument raised in lower court for first time in motion for rehearing was "not seasonably presented" and need not be addressed on review); *Sanford Brothers Boats, Inc. v. Vidrine*, 412 F.2d 958, 971 (5th Cir. 1969).

An issue not properly preserved for appeal will generally not be considered unless the issue is a purely legal one and the asserted error is so obvious that the failure to consider it would result in a miscarriage of justice. *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1145 (5th Cir. 1981), *cert. denied*, —— U.S.

---

**23.** The defense was not framed in constitutional terms:

The Defendant further denies that the Courts of the State of California had jurisdiction over the real and personal property of this Defendant, which real and personal property was located outside the territorial limits of the State of California.

**24.** "It is a serious question that may have been developed through discovery . . . that may have established or led toward the establish-

ment of the fact that since Florida was the domiciliary residence of both of the parties the property which had been acquired was not community property under the laws of the State of California or even quasi community property since it was all acquired outside of the State of California when neither of the parties were domicilliaries of the State of California. . . . Serious due process questions could have been developed. . . ."

——, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982). Here we find that neither prong of the "plain error" exception is met. First, this issue is thoroughly factridden. It depends on whether Fred and Verone were domiciled in California,[25] which assets are located out of state and their value, and whether those assets were acquired at a time when the acquiring spouse was not domiciled in California.

■ Second, California's exercise of jurisdiction over the marital assets does not plainly render the property judgment subject to collateral attack. Assuming that an unconstitutional exercise of jurisdiction occurred, it is possible that taking cognizance of this jurisdictional defect is foreclosed under principles of res judicata.[26] Although judgments void for lack of jurisdiction will not be enforced, jurisdiction may not be questioned if the issue was fully and fairly litigated in the rendering court, *Underwriters National Assurance Co., supra,* —— U.S. at ——–——, 102 S.Ct. at 1315–68, 71 L.Ed.2d at 570–74, or, even if not litigated, if the attacking party had a full and fair opportunity to litigate the issue, *Sherrer v. Sherrer,* 334 U.S. 343, 351, 68 S.Ct. 1087, 1091, 92 L.Ed. 1429 (1948). Fred made a special appearance in California to quash service of process, contending in part that simple residence was not constitutionally sufficient to support jurisdiction in a matrimonial case for "purpose of support, attorney's fees or other in personam orders," but instead domicile is required. The court ruled that residence was sufficient. Thus, the alleged unconstitutionality appears to have been fully litigated and decided in the California court, which would foreclose Fred from any collateral attack on this issue.[27]

## V.

In this bitter and protracted litigation Verone is largely successful. The majority of defects in the two California judgments awarding support and community property are either nonexistent or not subject to collateral attack either under federal principles limiting full faith and credit or under California principles of collateral attack. California law does allow limited collateral attack of the default property judgment because it grants more relief than requested in the complaint, so we find that, with respect to the principal amount awarded by its terms, enforcement of the property judgment is limited to $7,500,000.

**25.** This issue was disputed by the parties in the California court when Fred made a special appearance to quash summons but was never adjudicated. *The court ruled that Fred was a resident and that this was sufficient under California's long arm statute, even in matrimonial cases. No ruling was made whether Fred was a domiciliary.*

**26.** We examine federal principles in text. It is clear that the defect would not be subject to collateral attack in California as well, because there the lack of jurisdiction must appear affirmatively on the face of the record. *Texas Co. v. Bank of America National Trust & Sav. Ass'n.,* 5 Cal.2d 35, 53 P.2d 127, 130–31 (1935). Because of the undeveloped factual matters on which Fred's argument depends, this requirement is not met.

**27.** Even if the issue were not actually litigated, it is arguable that because Fred was served with proper service of process and given notice of the California proceedings his *opportunity* to raise the issue was sufficient to foreclose any consideration of the issue in defense to full faith and credit enforcement. Had Fred made a general appearance in the California court he could not now question jurisdiction. *Sherrer, supra.* Fred distinguishes *Sherrer* on the basis that he defaulted and made no general appearance. The res judicata effect of a default judgment on jurisdictional defects is an unsettled question, however, see *Sherrer,* 334 U.S. at 353, 68 S.Ct. at 1092; *Developments in the Law of Res Judicata,* 65 Harv.L.Rev. 818, 853 n.258 (1952), some scholars arguing that a default judgment has the same effect, K. Moore, *Collateral Attack on Subject Matter Jurisdiction: A Critique of the Restatement (Second) of Judgments,* 66 Cornell L.Rev. 534, 551–54 (1981), and others arguing that jurisdictional defects in default judgments should always be open for collateral attack, Hazard, *Revisiting the Second Restatement of Judgments: Issue Preclusion and Related Problems,* 66 Cornell L.Rev. 564, 591 (1981); *Restatement (Second) of Judgments* § 12 & comment f, § 65 & comment b (1982). Because there is no definitive law on the question the merit of Fred's omitted defense was not so plain or obvious that it is manifest injustice not to consider the defense.

Rehearing GRANTED, prior opinion WITHDRAWN and new opinion filed. The judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings not inconsistent with this opinion.