597 F.2d 220
 202 U.S.P.Q. 650
 V. T. A., INC., Plaintiff,
v.
AIRCO, INC., Defendant-Appellee,
v.
DONNELLY MIRRORS, INC., a corporation, John S. Chapin, Third
Party Defendants,
Ted Van Vorous and Vac-Tec Systems, Inc., a corporation,
Third Party Defendants-Appellants.
V. T. A., INC., Plaintiff-Counter-Defendant,
v.
AIRCO, INC., Defendant-Counter-Plaintiff, Appellant,
v.
DONNELLY MIRRORS, INC., a corporation, Ted Van Vorous, and
John S. Chapin, Third Party Defendants-Appellees.
 Nos. 77-1341, 78-1553.
 United States Court of Appeals, Tenth Circuit.
 Argued and Submitted Nov. 14, 1978.
Decided April 19, 1979.
 
 John E. Reilly, Denver, Colo. (with James R. Young, Denver, Colo., on brief), for third party defendants-appellants and third party defendants-appellees Ted Van Vorous and Vac-Tec Systems, Inc.
 Carl Hoppe, San Francisco, Cal. (Ernest M. Anderson, San Francisco, Cal., on brief), of Eckhoff, Hoppe, Slick, Mitchell & Anderson, San Francisco, Cal. (Robert H. Harry and Donald E. Phillipson of Davis, Graham & Stubbs, Denver, Colo., on brief), for defendant-appellee and defendant-counter-plaintiff-appellant Airco, Inc.
 Before SETH, Chief Judge, and BARRETT and McKAY, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 This is a consolidated appeal. Airco, Inc. (Airco) appeals from the denial of a motion for civil contempt for a claimed violation by Ted Van Vorous and Vac-Tec Systems, Inc. (Vac-Tec) of the terms of an injunction. Van Vorous and Vac-Tec appeal from the denial of a Rule 60(b) motion seeking relief from the court order issuing the injunction.
 
 
 2
 The genesis of the dispute concerns a 1972 contract between Airco and Vacuum Technology Associates, Inc. (VTA). VTA agreed to develop a high speed sputtering system for use in industrial coating.[1] VTA further guaranteed to Airco all rights to the device. At the time of the agreement Van Vorous was the sole stockholder and operating officer of VTA. John S. Chapin was a VTA employee who, in the course of his employment, developed the contemplated device. Following development of the device, Airco unilaterally filed a patent application in Chapin's name. VTA sued to adjudicate ownership of the invention. Airco counterclaimed against VTA, asserting its contract rights under the terms of the 1972 agreement. The dispute was settled prior to trial, and a consent decree was entered. Under the terms of the consent decree, Airco obtained exclusive rights to the Chapin invention. The order of the court enjoined Van Vorous, Chapin, and Donnelly Mirrors, Inc. (which had become an 80% Stockholder in VTA), from "using, offering for sale and manufacturing" the device.[2]
 
 
 3
 VTA was declared bankrupt less than two months after the entry of the district court's Order and Decree. Van Vorous subsequently formed Vac-Tec, which manufactures and sells sputtering devices similar to those formerly manufactured and sold by VTA. Airco promptly filed a motion for civil contempt against Van Vorous and Vac-Tec for alleged violations of the terms of the injunction. After a full evidentiary hearing on the civil contempt motion the district court concluded, among other things,[3] that the sum of the similarities between the Vac-Tec and Airco products was not sufficient to warrant a finding that the scope of the injunction had been violated.
 
 
 4
 Concurrently with Airco's motion for civil contempt, Van Vorous filed a 60(b) motion seeking to void the decree and injunction. Among the contentions raised were arguments that the district court lacked jurisdiction to order an injunction, that the injunction constituted an illegal restraint of trade,[4] and that changed circumstances made the injunction inequitable. Without allowing discovery, the district court denied the 60(b) motion, ruling that "the subject pleading raises no basis for relief under that rule"[5] and that the motion, filed sixteen months after entry of the consent decree, was not filed within a "reasonable" time. Airco appeals the denial of the civil contempt motion. Van Vorous and Vac-Tec appeal the denial of the 60(b) motion.
 
 
 5
 * 60(b) MOTION
 
 
 6
 When reviewing the denial of a 60(b) motion,[6] we are generally limited to determining whether the denial amounts to an abuse of discretion.[7] Unless the trial court was powerless to render the judgment in the first instance,[8] an appeal from the denial of a 60(b) motion raises for review only the order itself and not the underlying judgment. Browder v. Director, Department of Corrections, 434 U.S. 257, 263 n.7, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978); Hayward v. Britt, 572 F.2d 1324, 1325 (9th Cir. 1978) (per curiam); Pagan v. American Airlines, Inc., 534 F.2d 990, 992-93 (1st Cir. 1976). We note that the underlying judgment was by consent and has the same force and effect for 60(b) purposes as a judgment rendered on the merits following trial. United States v. Kellum, 523 F.2d 1284, 1287 (5th Cir. 1975); Siebring v. Hansen, 346 F.2d 474, 477 (8th Cir.), Cert. denied, 382 U.S. 943, 86 S.Ct. 400, 15 L.Ed.2d 352 (1965); Securities & Exchange Commission v. Thermodynamics, Inc., 319 F.Supp. 1380, 1382 (D.Colo.1970), Aff'd, 464 F.2d 457 (10th Cir. 1972), Cert. denied,410 U.S. 927, 93 S.Ct. 1358, 35 L.Ed.2d 588 (1973).
 
 
 7
 Although Van Vorous' motion did not specify which subdivision of 60(b) he relied on, apparently his arguments appealed to 60(b)(4), (5) and (6). Rule 60(b)(5) allows relief from the operation of judgment when "it is no longer equitable" to give the judgment prospective application. Rule 60(b)(6) provides a remedy for "any other reason justifying relief." Van Vorous contends on appeal that the unforeseen bankruptcy of VTA (which was allowed to compete with Airco under license provisions in the settlement agreement) makes it inequitable to enforce the injunction. He further argues apparently under 60(b)(6) that the injunction ordered by the district court amounts to an unlawful enlargement of patent monopoly, a violation of public policy and an illegal restraint of trade. We need not reach the merits of these arguments relative to 60(b)(5) and 60(b)(6) since both subdivisions of the motion have a "reasonable" time requirement. We cannot say, as a matter of law, that the district court erred in concluding that the motion, filed sixteen months after judgment, was not filed within a reasonable time.
 
 
 8
 Van Vorous' arguments based on Rule 60(b)(4) present a more troublesome issue because 60(b)(4) is not subject to any time limitation.[9] This subdivision provides relief from final judgment if the judgment is void. We must therefore determine whether there is any basis for relief under that rule.
 
 
 9
 A judgment is not void merely because it is or may be erroneous. Marshall v. Board of Education, 575 F.2d 417, 422 (3d Cir. 1978); Lubben v. Selective Service System Local Board No. 27, 453 F.2d 645, 649 (1st Cir. 1972); See Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 374-78, 60 S.Ct. 317, 84 L.Ed. 329 (1940). For a judgment to be void under Rule 60(b)(4), it must be determined that the rendering court was powerless to enter it. If found at all, voidness usually arises for lack of subject matter jurisdiction or jurisdiction over the parties. It may also arise if the court's action involves a plain usurpation of power[10] or if the court has acted in a manner inconsistent with due process of law.[11] In the interest of finality, the concept of setting aside a judgment on voidness grounds is narrowly restricted.[12]
 
 
 10
 Van Vorous raises several arguments of potential applicability to a 60(b)(4) motion. He first contends that enforcement of the injunction by summary contempt proceedings operates to deny him due process of law. The apparent thrust of this argument is that enforcement of the injunction in a contempt proceeding denies him the opportunity to challenge the validity of the Airco claims submitted for patent protection. While we agree with Van Vorous' contention that a district court cannot determine the validity of a claim whose patent is pending, it does not follow that the district court was powerless to enforce alleged violations of a consent decree restraining activities relating to such claims. Moreover, we are not persuaded that Van Vorous has been denied an opportunity to dispute the validity of the Airco claims. There is no question about Van Vorous having had notice and an opportunity to be heard in connection with the proceeding that culminated in the consent decree. He was not denied opportunities to reject the proposed stipulated settlement or to challenge the validity of the development agreement out of which the Airco claims arose. While a judgment may be void for 60(b)(4) purposes if its entry has occurred in such an arbitrary or improper manner that due process has been violated, such a showing has not been made in this case. The court had jurisdiction over the parties and over the subject matter in the consent decree proceeding. The proceeding was not conducted in a manner that deprived Van Vorous of notice, hearing, or other fundamental constitutional rights. We therefore reject Van Vorous' 60(b)(4) due process contentions.
 
 
 11
 Van Vorous makes a second 60(b)(4) contention, claiming that the consent decree's injunction is void as an unlawful restraint of trade due to its potentially unlimited time and geographic coverage. While it is conceivable that the injunction secures for Airco rights greater than those contemplated by state and federal law,[13] we cannot say that any error in this respect rises to the level of constitutional infirmity subject to collateral attack under 60(b)(4). We do not discern in this context a "plain usurpation" of power by the district court. Assuming that the judgment was erroneous in the first instance, the proper procedure for review would have been by direct appeal, not collateral attack. Lubben v. Selective Service System Local Board No. 27, 453 F.2d at 649.[14]
 
 
 12
 Van Vorous' final argument is that the judgment is void because the district court was powerless to secure, by injunction, monopoly rights for Airco prior to the issuance of a valid patent. His point seems to be that such protection is available only through the United States Patent Office. Even if the parties' consent decree does technically run afoul of federal patent law principles,[15] the problem would be one of relief from an erroneous judgment, not a void one. The district court had requisite jurisdiction over the parties and over the subject matter. The court did not pretend to enjoin the public from copying the ideas expressed in Airco's claims. Acting in accordance with conventional common law principles, the court simply enjoined violation of the parties' agreement. We do not regard this as a clear usurpation of Patent Office authority.
 
 
 13
 Stipulated judgments negotiated in open court are not to be easily set aside. Such judgments are as final as those entered following trial. It is quite true that a judgment may be collaterally attacked under 60(b)(4) when the rendering court was powerless to enter it. But this remedy is not available to correct mere legal error. The alternative would be to upset the delicate balance between finality of judgment and justice that Rule 60(b) seeks to maintain. Inasmuch as the judgment in this case has not been shown to be void under the narrow confines of Rule 60(b)(4), we will not set it aside. We therefore affirm the denial of the 60(b) motion.
 
 II
 DENIAL OF CONTEMPT MOTION
 
 14
 When reviewing the grant or denial of civil or criminal contempt motions, we are limited to determining whether the ruling of the district court amounts to an abuse of discretion. United States v. Reide, 494 F.2d 644 (2d Cir. 1974) (per curiam); Duncan v. Royal Tops Manufacturing Co., 343 F.2d 669 (7th Cir. 1965); Keyes v. United States, 314 F.2d 123 (9th Cir. 1963) (per curiam); Jewel Tea Co. v. Kraus, 204 F.2d 549, 550-51 (7th Cir. 1953); Huffman v. United States, 148 F.2d 943 (10th Cir. 1945).
 
 
 15
 The district court entertained a full evidentiary hearing on Airco's motion for civil contempt. It treated the underlying VTA-Airco agreement as a contract, refusing to apply strict patent law principles except for a discussion of "prior art" to aid in determining the intent of the parties. The court concluded that the parties intended to give a literal meaning to the provisions of their agreement. The court's analysis was influenced by its perception that industrial sputtering devices are not unique. Indeed, the Airco patent application had itself been placed in interference with another patented sputtering device. These considerations made it far from certain that the Chapin device would ever be patented. Interpreting the agreement in a literal fashion, the court made the following pertinent findings of fact and conclusions of law concerning the differences between Vac-Tec's device and the patent pending Chapin device:
 
 
 16
 The anode described in the patent application is a distinct electrode. The sputtering devices produced and sold by Vac-Tec do not include an anode as a separate element but merely use the sputtering system wall to perform the anode function.
 
 
 17
 . . . It is uncontested that Van Vorous and Vac-Tec did not include cathodes of any shape in the devices manufactured and sold but simply furnished a list of manufacturers from whom cathodes could be obtained. Additionally, the Vac-Tec devices can accommodate conical and rounded targets.
 
 
 18
 The two sputtering devices employ different configurations of the magnetic means. . . . The result is a 25% Greater cathode utilization rate when the sputtering apparatus produced by Van Vorous is used.
 
 
 19
 The sum of the addition of these differences is sufficient to find that Van Vorous and Vac-Tec have not violated the scope of the injunction.
 
 
 20
 Record, vol. 1, at 199-200. Airco does not dispute the factual findings concerning the differences between the devices. Yet, it claims the district court erred in concluding that "the sum of the addition of these differences" was sufficient to justify denying the contempt motion. We do not agree.
 
 
 21
 Airco attempts to show that the factual findings, although ostensibly correct, are based on "erroneous legal conclusions." It makes this leap by claiming that "(t)he construction of patent claims of a pending application should be given no different meaning simply because they are in an application rather than an issued patent." This clears the way for Airco to argue patent infringement law in order to obviate the literal differences between the Chapin device and Vac-Tec products. If, as Airco contends, the parties intended to bind themselves by reference to patent infringement law, Airco would have secured the equivalent of a full patent as between itself and Van Vorous irrespective of the ultimate issuance of a valid patent. This version of the intent of the parties distorts the true context of the agreement. As previously indicated, the agreement was orchestrated at a time when similar sputtering devices had already been patented. The district court examined the prior art and determined the intent of the parties with respect to the Chapin device to be very narrow. Our review of the record does not reveal this interpretation of the contract to be erroneous. The court's catalogue of differences between the Vac-Tec and Chapin devices is supported by the record. We discern no abuse of discretion in the trial court's denial of the contempt motion. We therefore affirm.
 
 
 
 [1]
 Sputtering is a process that involves bombarding a target with charged particles to produce a metallic coating for a given object
 
 
 [2]
 The Order and Decree of the district court provides in pertinent part:
 That an injunction is hereby issued enjoining V. T. A., Inc., DONNELLY MIRRORS, INC., TED VAN VOROUS and JOHN S. CHAPIN from using, offering for sale and manufacturing sputtering apparatus on which pending claims in said U. S. Application Serial No. 438,482 read, with the exception that said injunction does not apply to any acts by said parties conducted under license granted by AIRCO and shall not apply (a) after the said U. S. Application Serial No. 438,482 is finally and completely (with no divisional or continuing applications being filed thereon) abandoned, or . . . (c) any patent issuing from such U. S. Application, divisional or continuation thereof, finally is adjudged invalid . . . .
 Record, vol. 4, at 90-91.
 
 
 [3]
 One of the court's conclusions was that Vac-Tec was the alter ego of Van Vorous. Record, vol. 1, at 194. For purposes of this opinion, references to Van Vorous' appellate contentions will implicate Vac-Tec as well
 
 
 [4]
 This argument is based in part on the notion that an underlying agreement covering a patent pending device is by its terms an unreasonable restraint of trade when it contains no ascertainable geographic or time limitations
 
 
 [5]
 Record, vol. 4, at 175
 
 
 [6]
 Rule 60(b) of the Federal Rules of Civil Procedure provides in pertinent part:
 On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or . . . it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.
 
 
 [7]
 A motion for relief from judgment is an extraordinary remedial procedure and the order of denial by a trial court will be set aside only upon a showing of abuse of discretion. See Pagan v. American Airlines, Inc., 534 F.2d 990, 993 (1st Cir. 1976); Wilkin v. Sunbeam Corp., 466 F.2d 714 (10th Cir. 1972), Cert. denied, 409 U.S. 1126, 93 S.Ct. 940, 35 L.Ed.2d 258 (1973); Caribou Four Corners, Inc. v. Truck Ins. Exch., 443 F.2d 796 (10th Cir. 1971); 11 C. Wright & A. Miller, Federal Practice and Procedure Civil § 2872 (1973). The motion may not be used as a substitute for direct appeal. Horace v. St. Louis Southwestern R. R. Co., 489 F.2d 632 (8th Cir. 1974); Wojton v. Marks, 344 F.2d 222 (7th Cir. 1965)
 We note that this standard applies to reviewing an exercise of discretion. An appellate court can of course readily reverse a lower court that has erred as a matter of law. 11 C. Wright & A. Miller, Federal Practice and Procedure Civil § 2872 (1973).
 
 
 [8]
 If a judgment is void, for example, under 60(b)(4), it is necessary to evaluate the validity of the underlying judgment in reviewing the order denying the motion. If the underlying judgment is void, the order based on it is void. Austin v. Smith, 114 U.S.App.D.C. 97, 103, 312 F.2d 337, 343 (1962). If voidness is found, relief is not a discretionary matter; it is mandatory. See 11 C. Wright & A. Miller, Supra note 7, at § 2862
 
 
 [9]
 Arguably, a motion to set aside a judgment for voidness under 60(b)(4) is subject to a "reasonable" time limitation. Indeed, the rule explicitly states that a motion made under sections other than 60(b)(1), (2) or (3) must be filed within a reasonable time. However, if a judgment is void, it is a nullity from the outset and any 60(b)(4) motion for relief is therefore filed within a reasonable time. 11 C. Wright & A. Miller, Supra note 7, at § 2866
 
 
 [10]
 7 Moore's Federal Practice P 60.25(2) (2d ed. 1978)
 
 
 [11]
 Arthur Andersen & Co. v. Ohio, 502 F.2d 834, 842 (10th Cir.), Cert. denied, 419 U.S. 1034, 95 S.Ct. 516, 42 L.Ed.2d 309 (1974); Bass v. Hoagland, 172 F.2d 205, 209 (5th Cir.), Cert. denied, 338 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494 (1949); 11 C. Wright & A. Miller, Supra note 7, at § 2862. Violations of other fundamental constitutional rights may give rise to voidness as well. E. g., Crosby v. Bradstreet Co., 312 F.2d 483 (2d Cir.), Cert. denied, 373 U.S. 911, 83 S.Ct. 1300, 10 L.Ed.2d 412 (1963) (First Amendment violation)
 
 
 [12]
 7 Moore's Federal Practice P 60.25(2) (2d ed. 1978)
 
 
 [13]
 The Constitution by Article I, Section 8, authorizes Congress to secure "for limited Times" to inventors "the exclusive Right" to their discoveries. That right is now embodied in 35 U.S.C. § 154 (1976), which provides in part as follows:
 Every patent shall contain a short title of the invention and a grant to the patentee, his heirs or assigns, For the term of seventeen years, subject to the payment of issue fees as provided for in this title of the right to exclude others from making, using, or selling the invention throughout the United States, referring to the specification for the particulars thereof.
 (emphasis added). Van Vorous points out that the injunction does not terminate by its terms if a patent is ultimately issued to Airco thereby exceeding the 17 year statutory time limit for issued patents. He argues that the effect of exceeding the scope of patent protection would be to violate antitrust and state laws prohibiting illegal restraints of trade. We need not decide at this point whether a time or geographic limitation of "reasonableness" should be read into the injunction. Should a patent ultimately issue and Airco attempt to perpetuate the injunction, or should Airco fail diligently to pursue the application, it may well be that the judgment should be considered satisfied, or that continued enforcement would work an inequity as defined by provisions of 60(b)(5). The issue of reasonableness in timely filing a 60(b) motion is to be determined by all the facts and circumstances as they exist at commencement of suit. Van Vorous' prospects for challenging the injunction by a future 60(b)(5) motion are of course not before us and we decline to speculate on them. We merely point out that the timeliness of any future 60(b)(5) motion must be considered in light of the circumstances then existing.
 
 
 [14]
 We do not decide the legal propriety of the underlying judgment since it is only necessary to rule that the judgment is not void under 60(b)(4). Van Vorous cites numerous cases for the proposition that a party may collaterally attack the validity of a patent. We emphasize, however, as did the trial court, that patent law does not form the basis of the agreement and the injunction was not issued from that perspective
 
 
 [15]
 The question may be a close one in light of the Supreme Court's recent decision in Aronson v. Quick Point Pencil Co., --- U.S. ----, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979). Aronson reaffirms the independent significance of private contracts that place constraints on ideas not subject to patent protections. Specifically, the Court held that patent law did not preempt enforcement of an agreement to pay a patent applicant royalties on sales of articles embodying the invention, even if a patent application is denied
 To the extent Aronson supports the independent significance of private agreements restricting the use of unpatented ideas, it is not hostile to the consent decree in this case. It is nevertheless conceivable that the injunction could be attacked by extending into the present context the principles announced in such cases as Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964) and Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) (holding that state unfair competition statutes may not be used to secure injunctive monopolies in conflict with exclusive federal patent authority). But such an extension of those principles could only establish that the instant injunction was legally erroneous, not that it was void from its pronouncement.