**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 7, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

CHOICE HOSPICE, INC., d/b/a Complete
Hospice Care of Oklahoma City, an
Oklahoma corporation; FAMILY CHOICE
HOSPICE, LLC, d/b/a Complete Hospice
Care, an Oklahoma limited liability
company; THREE RIVERS
CONSULTING AND MANAGEMENT,
LLC, d/b/a Complete Hospice Care of
Eastern Oklahoma. an Oklahoma limited
liability company; NEIGHBORHOOD
HOSPICE, LLC, d/b/a Complete Hospice
Care of Southern Oklahoma, an Oklahoma
limited liability company,

      Plaintiffs - Appellees,

v.

AXXESS TECHNOLOGY SOLUTIONS,
INC., a Texas corporation,

      Defendant - Appellant.

No. 24-6002

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:22-CV-00932-J)**
_____

Troy R. Rackham, Spencer Fane LLP, Denver, Colorado (Andrew W. Lester and
Mariana Pitts, Spencer Fane LLP, Oklahoma City, Oklahoma; Amanda L. Lewandowski,
Spencer Fane LLP, Kansas City, Missouri; and Michael D. McClintock, McClintock
Law, Nichols Hills, Oklahoma, on the briefs), for Defendant – Appellant.

Mitchell D. Blackburn, Conner & Winters, LLP (Hilary Velandia, with him on the
briefs), Tulsa, Oklahoma, for Plaintiffs – Appellees.

_____

Before **MATHESON**, **McHUGH**, and **ROSSMAN**, Circuit Judges.

_____

**McHUGH**, Circuit Judge.

_____

Choice Hospice, Inc.; Family Choice Hospice, LLC; Three Rivers Consulting and Management, LLC; and Neighborhood Hospice, LLC (collectively, "Plaintiffs") sued Defendant Axxess Technology Solutions, Inc. ("Axxess") for breach of contract. Plaintiffs properly served Axxess, but Axxess mistakenly believed it had not been served due to an employee error. Because Axxess believed it had not been served, it did not respond to the complaint, and the district court entered a default judgment against Axxess.

Axxess moved to set aside the default judgment, arguing the district court lacked subject matter jurisdiction because the parties' contract required mediation ("First Motion to Vacate"). The district court denied the motion, and Axxess did not appeal that ruling. Over six months later, Axxess filed a second motion to set aside the default judgment, raising arguments under Federal Rule of Civil Procedure 60(b)(1), (4), and (6) ("Second Motion to Vacate"). The district court denied this motion on claim preclusion grounds, and Axxess timely appealed.

We affirm but not on claim preclusion grounds. Instead, we hold that the district court did not abuse its discretion by denying the Second Motion to Vacate because the arguments raised in that motion could have been raised in the First Motion to Vacate.

2

## I.    BACKGROUND

### A.    *Default Judgment*

Plaintiffs provide hospice services in Oklahoma. Axxess "provides electronic medical record software programs, billing software programs, billing technology, and personal claims processing services." App. Vol. I at 8–9. Accordingly, the parties entered a contract whereby Axxess would process and bill hospice claims on Plaintiffs' behalf.

On October 26, 2022, Plaintiffs filed suit against Axxess in the United States District Court for the Western District of Oklahoma, asserting the court had diversity jurisdiction under 28 U.S.C. § 1332. In their complaint, Plaintiffs alleged they were not receiving payments for their services because Axxess failed to properly process claims. Based on these allegations, Plaintiffs asserted a breach of contract claim and sought over $750,000 in damages.

The complaint and summons were served on Axxess on November 3, 2022, and again on November 7, 2022. On November 17, 2022, Plaintiffs filed a mediation request with the American Arbitration Association (AAA). That same day, Plaintiffs forwarded the mediation request and a copy of the complaint to Axxess. A cover letter explained that Plaintiffs were willing to participate in mediation, despite their belief that mediation was not contractually required.

According to Axxess, mediation was contractually required, and it did not know about the pending lawsuit because of an employee mistake. Regardless of the reason, it is undisputed that Axxess did not file an answer or otherwise respond to the

complaint by the required date. Thus, on December 2, 2022, Plaintiffs moved for an entry of default by the clerk of court.[1] On December 5, the clerk entered Axxess's default, and Plaintiffs applied to the district court for a default judgment.

Also on December 5, 2022, attorney Christopher Groves emailed the AAA, explaining that he had "just been retained by Axxess on this matter." App. Vol. II at 156. Plaintiffs were not included on this email. Later that day, the AAA responded to Mr. Groves's email and included attachments to Plaintiffs' mediation request and the complaint. Plaintiffs were included on this email to Mr. Groves, and the AAA stated it was "acknowledg[ing] receipt of Mr. Groves'[s] notice of appearance on behalf of Axxess, a copy of which is attached for counsel for Choice Hospice." *Id.*

Later that afternoon, Mr. Groves emailed Melody Lenox, the Axxess employee responsible for receiving and processing lawsuits. Mr. Groves asked if she knew "that [Plaintiffs] filed suit in Oklahoma Federal District Court." App. Vol. III at 162. Ms. Lenox replied, "No I was not aware. What do we need to do?" *Id.* In a declaration, Mr. Groves avers that he spoke with Ms. Lenox on the phone that day and that she confirmed Axxess had not been served in the pending lawsuit.

---

[1] Federal Rule of Civil Procedure 55 governs the entry of default judgments. Under Rule 55, the clerk must enter the default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). After default is entered, the party entitled to a judgment applies to either the clerk or the district court for an entry of default judgment. *Id.* at R. 55(b). Whether the party must apply to the clerk or to the court depends on the circumstances. *Id.*

On January 4, 2023, the district court entered a default judgment against Axxess, awarded Plaintiffs $928,963.11 in damages, and entered judgment in Plaintiffs' favor. Two days later, on January 6, Plaintiffs' and Axxess's counsel attended a pre-mediation conference. At the conference, Plaintiffs' counsel reported that a default judgment had been entered. According to Axxess, this was the first time it learned about the default. After the pre-mediation conference, mediation efforts stalled because Axxess demanded that Plaintiffs vacate the default judgment, while Plaintiffs refused to vacate but were willing to mediate to avoid enforcement costs.

### B.    Ms. Lenox

We detour briefly to explain why Axxess mistakenly believed it had not been served. When Plaintiffs filed their suit, Axxess's "process for intake of lawsuits began with Axxess receiving a summons and complaint." App. Vol. III at 62. After receipt, "the summons and complaint would be uploaded to an electronic inbox monitored by Ms. Lenox." *Id.* Ms. Lenox would review the documents and then forward them to Mr. Groves.

In June 2022—approximately four months before Plaintiffs filed suit— Ms. Lenox's brother died, and she took bereavement leave. Then, in September 2022, Ms. Lenox "took on additional job responsibilities" that "required her to work overseas for weeks at a time." *Id.* Ms. Lenox was working overseas from October 28 through November 19, 2022, meaning she was out of the country when Plaintiffs served Axxess. Axxess explains that while Ms. Lenox was overseas, her work "commitments and personal trauma caused her to lose focus on her job

5

responsibilities in the United States, including her responsibilities related to the intake of lawsuits." *Id.* at 63. As a result, Ms. Lenox "never saw the summons and complaint in the electronic folder and never advised outside counsel of their existence (or later, of her mistake in not finding it)." *Id.*

After learning of the default judgment, Mr. Groves "worked to determine how Axxess'[s] process for intake of lawsuits failed." *Id.* at 100. But Ms. Lenox was working overseas from January 6 through January 23, 2023, and she took a second bereavement leave from January 23 to February 10, 2023, after her father died. Mr. Groves avers that during this time, he "was unable to obtain any material information from Ms. Lenox concerning the breakdown of Axxess'[s] lawsuit intake procedures." *Id.* at 69.

### C.    *First Motion to Vacate*

On March 3, 2023, Axxess filed its First Motion to Vacate.[2] Although this motion was filed three weeks *after* Ms. Lenox returned from her second bereavement leave, Axxess states that Mr. Groves filed this motion "without having heard from Ms. Lenox" about why the lawsuit intake procedure failed. Appellant's Br. at 6.

In the First Motion to Vacate, Axxess argued the parties had "a valid and enforceable mediation/arbitration clause," meaning "Plaintiffs waived dispute

---

[2] Axxess refers to the March 3, 2023 motion as "the Rule 55 Motion." Appellant's Br. at 6. We refer to it as the "First Motion to Vacate" because the motion was not properly brought under Rule 55. *See infra* Section II.B.2.a.

resolution in a court of law." App. Vol. II at 43. Axxess thus argued the district court lacked subject matter jurisdiction, resulting in a void judgment.

In a footnote, Axxess explained the legal grounds for its motion:

Axxess makes this motion under Federal Rule of Civil Procedure 55(c). Although Axxess has evidence to support a motion under Federal Rule of Civil Procedure 60(b)(1) and is not waiving the ability to provide the Court such evidence upon request. Axxess is not doing so here because Axxess contends that the judgment should be vacated as void pursuant to Federal Rule of Civil Procedure 60(4) for lack of subject matter jurisdiction given that the parties waived Court disposition of any disputes between the parties in favor of mediation/arbitration, which Plaintiffs acknowledge by their conduct.

*Id.* at 43 n.1. The motion did not otherwise explain what rule or legal authority Axxess was relying on.

In response, Plaintiffs argued, among other things, that there was no applicable mediation clause and that even if there were, Axxess waived that defense by failing to timely respond to the complaint. Plaintiffs further argued that Axxess's motion could not be brought under Rule 55 because "[t]he court may set aside an entry of default for good cause, and it may set aside a final judgment under Rule 60(b)." *Id.* at 109 n.2 (quoting Fed. R. Civ. P. 55(c)). Thus, Plaintiffs argued, Axxess's "only course for [vacatur] of the final default judgment is Rule 60(b)," but Axxess "failed to provide any argument and/or evidentiary materials to support a [vacatur] pursuant to Rule 60(b)." *Id.*

In reply, Axxess reasserted its argument that the court lacked subject matter jurisdiction because of a binding mediation clause. Axxess also spent more than two pages discussing Rule 60(b) and the "excusable neglect" factors, explaining that "[i]t

7

was not until after entry of default judgment that Axxess became aware of the need to defend this lawsuit." *Id.* at 197. However, Axxess did not explain why it mistakenly believed that it had not been served, nor did it explain that it was trying to gather information from Ms. Lenox.

Although Axxess argued excusable neglect under Rule 60(b), it "maintain[ed] that its motion [was] made pursuant to Fed. R. Civ. P. 55(c)." *Id.* at 196 n.16. But Axxess did not respond to Plaintiffs' argument that Rule 55 was an improper vehicle for this motion. Axxess instead stated, "Plaintiffs argue, however, that the more stringent standards of Fed. R. Civ. P. 60(b) apply. Assuming arguendo Plaintiffs are correct in their assertion, Axxess has evidence in support of a motion under Rule 60(b) and is not waiving the ability to furnish such evidence to the Court upon request." *Id.*

On April 19, 2023, the district court denied the First Motion to Vacate. It first addressed Axxess's argument that the judgment was void because the court lacked subject matter jurisdiction. The court construed this as a Rule 60(b)(4) argument and concluded that even if there was a binding mediation clause, Axxess waived its right to force mediation because its "conduct was inconsistent with the right to [mediate] and improperly manipulated the judicial process." App. Vol. III at 49.

The court next rejected Axxess's Rule 60(b)(1) excusable neglect argument for two independent reasons. First, it held Axxess had waived the excusable neglect argument by not raising it until the reply. Second, the court found Axxess had offered "no reasonable explanation for its decision not to answer or otherwise respond to the

Complaint . . . or for its decision to wait fifty-six days after learning of the default judgment to seek relief." *Id.* at 50. Axxess did not appeal the order denying the First Motion to Vacate.

### D.   Second Motion to Vacate

On November 11, 2023—over six months after the court denied the First Motion to Vacate—Axxess filed its Second Motion to Vacate. Unlike with the first motion, Axxess explicitly relied on Rule 60(b), arguing that relief was justified under (b)(1), (4), and (6).

Axxess argued there had been excusable neglect under Rule 60(b)(1) because, "due to a convergence of personal and professional issues, Ms. Lenox failed to perform many aspects of her job during the relevant time period." *Id.* at 79–80. This was the first time Axxess explained its failure to answer the complaint and described Ms. Lenox's role in that failure. Axxess did not identify when it learned the relevant facts, stating only that before Axxess filed its First Motion to Vacate, "Ms. Lenox never told Mr. Groves why the procedure for intake of lawsuits broke down." *Id.* at 69.

Axxess next argued the judgment should be vacated as void under Rule 60(b)(4). According to Axxess, Plaintiffs were required to provide notice to Axxess of the default judgment proceedings. Because Plaintiffs did not provide notice, Axxess argued, the default judgment violated due process and was void.

Lastly, Axxess argued the default judgment should be vacated under Rule 60(b)(6), which permits relief for "any other reason that justifies relief." Axxess

argued that relief was justified by "Plaintiffs['] failure to provide Axxess'[s] counsel with notice of the default judgment proceedings and Plaintiffs['] manner of obtaining default judgment." *Id.* at 76–77.

The district court denied the Second Motion to Vacate. It concluded that claim preclusion applied because Axxess "had a full and fair opportunity to raise and litigate Rule 60(b) positions for which it did or could have known." App. Vol. IV at 212. Axxess's excusable neglect "argument could have easily been raised" in the First Motion to Vacate, the court explained, because even if Axxess did not know all the details, it knew Ms. Lenox had been mistaken about service. *Id.* The court, however, did not specifically address the arguments brought under Rule 60(b)(4) and (b)(6). Axxess timely appealed the order denying its Second Motion to Vacate.

### E.     *Supplemental Briefing*

In its reply brief on appeal, Axxess argued for the first time that the default judgment was void because Plaintiffs had failed to properly allege diversity of citizenship. Based on our review of the record, it appeared Plaintiffs had failed to properly allege the citizenship of the LLC Plaintiffs. We thus asked for supplemental briefing addressing (1) the citizenship of the LLC Plaintiffs and (2) the propriety of allowing Plaintiffs to amend their complaint on appeal under 28 U.S.C. § 1653.

In response to our order, Plaintiffs moved to amend their complaint on appeal so that it properly alleges the citizenship of the LLC Plaintiffs. Axxess opposes this motion.[3]

In its supplemental briefing, Plaintiffs argue that there is diversity of citizenship and that amendment on appeal is appropriate under § 1653. In response, Axxess did not argue diversity is lacking. Instead, it argued that amendment on appeal would be improper and that under § 1653, we should vacate the default judgment and remand the case for Plaintiffs to amend their complaint and for Axxess to respond to the complaint on its merits.

## II.    DISCUSSION

We address subject matter jurisdiction first and grant Plaintiffs' motion to amend. After establishing we have jurisdiction, we address the merits of this appeal and conclude Axxess has not shown an abuse of discretion.

---

[3] Plaintiffs moved to supplement the record with corporate disclosure statements they filed in district court. We granted that motion. However, those disclosure statements are insufficient to demonstrate diversity of citizenship because they state only that Plaintiffs are not citizens of Texas—they do not affirmatively allege the citizenship of the LLCs' members. *See Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237–38 (10th Cir. 2015).

### A.    Subject Matter Jurisdiction

Plaintiffs asserted the district court had diversity jurisdiction under 28 U.S.C. § 1332(a)(1), which requires that the suit is between "citizens of different States."[4] Plaintiffs alleged that all Plaintiffs are citizens of Oklahoma and that Axxess is a citizen of Texas, but they did not adequately allege the citizenship of the LLC Plaintiffs. Nevertheless, the affidavits submitted on appeal provide the missing allegations. We thus grant Plaintiffs' motion to amend and conclude there is complete diversity.

The citizenship of an unincorporated entity—like an LLC—is derived from the citizenship of all the entity's members. *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237–38 (10th Cir. 2015) ("Supreme Court precedent makes clear that in determining the citizenship of an unincorporated association for purposes of diversity, federal courts must include all the entities' members."); *see also Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990) ("In sum, we reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members."). If any member of an unincorporated entity is itself an unincorporated entity, then the plaintiff must identify that unincorporated entity's members and those members' citizenship, tracing "through however many layers" necessary to reach

---

[4] Section 1332 also requires that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a). Plaintiffs alleged damages of at least $750,000 and were awarded $928,963.11, so the amount-in-controversy requirement is met.

either a corporation or a natural person. *Gerson v. Logan River Acad.*, 20 F.4th 1263, 1269 n.2 (10th Cir. 2021) (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010)). So, unlike a corporation, the citizenship of an unincorporated entity cannot be established by alleging place of incorporation and principal place of business. *See* 28 U.S.C. § 1332(c)(1); *Carden*, 494 U.S. at 196–97 (explaining that § 1332(c)(1) applies to corporations but not to unincorporated entities).

Plaintiffs here include three LLCs. Yet in their complaint, Plaintiffs did not allege the citizenship of the LLCs' members. Instead, Plaintiffs alleged where those LLCs were organized and where they have their principal places of business. That is insufficient. Plaintiffs needed to identify each member and that member's citizenship, proceeding through each layer until a corporation's or natural person's citizenship was identified. *Siloam Springs Hotel*, 781 F.3d at 1237–38; *Carden*, 494 U.S. at 195; *Gerson*, 20 F.4th at 1269 n.2.

Although Plaintiffs' complaint does not establish diversity jurisdiction, Plaintiffs submitted affidavits on appeal that establish the LLC Plaintiffs are citizens of Oklahoma. More specifically, the affidavits demonstrate that when the complaint was filed, the sole member of Plaintiffs Family Choice Hospice, LLC and Neighborhood Hospice, LLC was Lola Edwards, a citizen of Oklahoma. Thus, those LLCs are citizens of Oklahoma. *See Siloam Springs Hotel*, 781 F.3d at 1234. The affidavits also demonstrate that at the relevant time, Plaintiff Three Rivers

13

Consulting and Management, LLC was a citizen of Oklahoma because its sole member was Cleland Edwards, a citizen of Oklahoma.[5]

This evidence demonstrates complete diversity between the parties,[6] a conclusion that Axxess does not dispute. Axxess instead argues that Plaintiffs should not be allowed to amend their jurisdictional allegations on appeal. We disagree.

"Defective allegations may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. Because there is no dispute that complete diversity exists, we see no reason why amendment should not be allowed. And although Axxess argues the default judgment here was void because the jurisdictional allegations were lacking, it does not cite supporting authority. Other circuits, however, have confronted this issue and have held that amendment on appeal is appropriate, explaining that "[a] judgment is only void where there is a 'total want of jurisdiction' as opposed to an 'error in the exercise of jurisdiction.'" *NewGen, LLC v. Safe Cig,*

---

[5] Axxess contends that the jurisdictional allegations are "contradictory" because Cleland Edwards's name is spelled differently in some filings. ECF No. 71 at 5. However, Cleland Edwards avers that he recently changed his name to Cleland from Cleoland. And regardless, we do not see how the spelling of Mr. Edwards's name bears on his citizenship.

[6] The remaining Plaintiff—Choice Hospice, Inc.—is also a citizen of Oklahoma because it is organized in Oklahoma and has its principal place of business in Oklahoma. 28 U.S.C. § 1332(c)(1). And Axxess is a citizen of Texas because it is incorporated in Texas and has its principal place of business in Texas. *Id.* Thus, there is complete diversity because all Plaintiffs are citizens of Oklahoma, and the only Defendant is a citizen of Texas.

14

*LLC*, 840 F.3d 606, 612 (9th Cir. 2016) (quoting *Watts v. Pinckney*, 752 F.2d 406, 409 (9th Cir. 1985)); *see also id.* at 613 ("Nothing in the text of § 1653 suggests that it applies only to judgments on the merits, not default judgments, as [the defendant] contends."); *Jacobs v. Patent Enf't Fund, Inc.*, 230 F.3d 565, 567–68 (2d Cir. 2000) (allowing the plaintiffs to amend jurisdictional allegations after default judgment without rendering the default judgment void).

We are persuaded by this reasoning and conclude that amendment is appropriate here because although diversity was inadequately alleged, it did exist. Accordingly, we grant Plaintiffs' motion to amend and, construing the complaint as amended, conclude the district court had diversity jurisdiction.

Although we allow amendment in this case, it is not always permitted. We remand or dismiss cases when necessary.[7] *See, e.g.*, *Penteco Corp. Ltd. P'ship–1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1523 (10th Cir. 1991) (remanding for jurisdictional fact finding because the plaintiff failed to properly allege the

---

[7] We allow amendment in this case because the facts supporting complete diversity are not actually disputed. We thus have a "[d]efective allegation[]" and not a defect in jurisdiction. 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."). But we have remanded when there is a dispute or a potential dispute that requires jurisdictional fact finding. *See Penteco Corp. Ltd. P'ship–1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1523 (10th Cir. 1991) (stating that although "we might" allow a plaintiff to amend jurisdictional facts on appeal under § 1653, it was "preferable not to address such a possible evidentiary dispute" and that the district court was the "proper forum to determine if a curative amendment can be made"); *id.* ("As an appellate court, we are in no position to make the necessary evidentiary rulings needed here."). That is not the case here.

15

citizenship of an unincorporated entity and there was a "possible evidentiary dispute"). We remind litigants to ensure that jurisdictional facts are adequately alleged in the district court.

### B.    Second Motion to Vacate

Turning to the merits, we first explain why claim preclusion is inapplicable. We then explain why the district court had discretion to deny each of Axxess's Rule 60(b) arguments.

### 1.    Claim Preclusion

The district court denied the Second Motion to Vacate based on claim preclusion, and Plaintiffs argue claim preclusion on appeal. We conclude claim preclusion does not apply.

Claim preclusion is an affirmative defense that "prevent[s] a party from litigating a legal claim that was or could have been the subject of a previously issued final judgment." *Johnson v. Spencer*, 950 F.3d 680, 693, 712 (10th Cir. 2020) (alteration in original) (quotation marks omitted). Claim preclusion applies only if three elements are met: "(1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Id.* at 693 (alteration in original) (quotation marks omitted).

Claim preclusion is inapplicable here for two reasons. First, although there was a final judgment, there was only one action and thus no "earlier action." *See id.* (quotation marks omitted). Second, rulings under Rule 60(b) are typically discretionary, so the district court should have relied on its discretionary authority to

16

deny a successive Rule 60(b) motion, rather than invoking claim preclusion.[8] *See*

*infra* Section II.B.2 (discussing *Servants of Paraclete v. Does*, 204 F.3d 1005 (10th

Cir. 2000)); *see also* 18A Charles Alan Wright & Arthur D. Miller, Federal Practice

and Procedure § 4447 (3d ed. June 2024 Update) ("Successive applications for [Rule

60(b)] relief raise the question whether ordinary rules of issue preclusion and claim

preclusion should apply. Since these remedies are in large part discretionary, the

preclusion question can often be avoided by reliance on a discretionary determination

that multiple applications should not be entertained.").

For these reasons, claim preclusion is inapplicable. Nonetheless, as we now

explain, we affirm on other grounds apparent in the record.[9] *See Walton v. Powell*,

821 F.3d 1204, 1212 (10th Cir. 2016) ("To prevent cases from needlessly bouncing

back and forth between district and appellate courts, this court is entitled to affirm a

---

[8] To support applying claim preclusion, the district court cited *In re Chuza Oil Co.*, No. 18-11836-t7, 2021 WL 5768482, at *4 (Bankr. D.N.M. Dec. 3, 2021). That case is not persuasive, however, because the bankruptcy court merely acknowledged that "successive motions under Rule 60(b) can implicate the equitable principles of issue and claim preclusion." *Id.* The bankruptcy court then ruled that the successive Rule 60(b) motion it was deciding was not precluded because the court had "expressly granted" permission for the successive motion. *Id.*

[9] On appeal, Plaintiffs also argue we should affirm based on the law-of-the-case doctrine. The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). The doctrine operates on both horizontal and vertical planes. *Harris v. City Cycle Sales, Inc.*, 112 F.4th 1272, 1279–80 (10th Cir. 2024). We affirm under *Servants of Paraclete v. Does*, 204 F.3d 1005 (10th Cir. 2000), which may be an implicit application of horizontal law of the case.

district court on alternative grounds that court didn't consider if those grounds are adequate, apparent in the record, and sufficiently illuminated by counsel on appeal.").

## 2.     Rule 60(b) Arguments

Under Federal Rule of Civil Procedure 60(b), a court "may relieve a party or its legal representative from a final judgment, order, or proceeding." This is an "extraordinary remedial procedure." *V. T. A., Inc. v. Airco, Inc.*, 597 F.2d 220, 223 n.7 (10th Cir. 1979). Accordingly, a court reviewing the denial of a Rule 60(b) motion is "generally limited to determining whether the denial amounts to an abuse of discretion."[10] *Id.* at 223. A district court abuses its discretion if its decision is "arbitrary, capricious, whimsical, or manifestly unreasonable." *Lebahn v. Owens*, 813 F.3d 1300, 1306 (10th Cir. 2016) (quotation marks omitted).

Relevant here, a "successive Rule 60(b) motion" is an "inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Absent extraordinary circumstances . . . the basis for the second motion must

---

[10] Although denial of a Rule 60(b) motion is typically reviewed for abuse of discretion, de novo review applies if "a party moves for relief on the ground that the judgment is void under Rule 60(b)(4)." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011). "This is because relief is not a discretionary matter; it is mandatory where Rule 60(b)(4) is properly invoked." *Id.* (internal quotation marks omitted). The Second Motion to Vacate relied in part on Rule 60(b)(4), so Axxess argues de novo review applies. We decline to apply de novo review because Axxess did not properly invoke Rule 60(b)(4). *See infra* Section II.B.2.b.

not have been available at the time the first motion was filed." *Id.*; *see also Lebahn*, 813 F.3d at 1306 ("[A] Rule 60(b) motion is not an appropriate vehicle to advance new arguments or supporting facts that were available but not raised at the time of the original argument.").

Axxess's Second Motion to Vacate relied on 60(b)(1), (4), and (6). We address each argument in turn, concluding that all were improperly raised in the successive motion.

a.      *Rule 60(b)(1) – excusable neglect*

Axxess argues the district court should have vacated the default judgment under Rule 60(b)(1) because Ms. Lenox's error constituted excusable neglect. Assuming there was excusable neglect, this argument should have been raised in the First Motion to Vacate.

The following facts support Axxess's excusable neglect argument: (1) in June 2022, Ms. Lenox took bereavement leave following her brother's death; (2) in September 2022, Ms. Lenox took on additional job responsibilities that included working overseas; (3) Ms. Lenox was working overseas when Axxess was served in November 2022; (4) Ms. Lenox incorrectly told Mr. Groves that Axxess had not been served; (5) Ms. Lenox was working overseas when Axxess learned about the default judgment; and (6) Ms. Lenox took bereavement leave from January 23 to February 10, 2023, following her father's death.

Importantly, Ms. Lenox's overseas travel and bereavement leave concluded by February 10, 2023—three weeks before Axxess filed its First Motion to Vacate.

19

Thus, the events supporting Axxess's excusable neglect argument all occurred before Axxess filed its First Motion to Vacate. And there is no reason to believe this information was unavailable to Axxess—Axxess employed Ms. Lenox, and it has not argued that it did not know Ms. Lenox was working overseas and had taken bereavement leave. Moreover, in the First Motion to Vacate, Axxess noted that it "has evidence to support a motion under Federal Rule of Civil Procedure 60(b)(1)." App. Vol. II at 43 n.1. Axxess made no effort to identify that "evidence," nor did it indicate that it needed more time to investigate.

So, in the First Motion to Vacate, Axxess could have explained that (1) Ms. Lenox was responsible for lawsuit intake; (2) since June 2022, Ms. Lenox had taken bereavement leave twice and was handling increased work responsibilities; (3) Ms. Lenox was working overseas when Axxess was served; and (4) Ms. Lenox incorrectly told counsel that Axxess had not been served. Because these are the facts supporting Axxess's excusable neglect argument, the argument could have been raised in the First Motion to Vacate. Axxess disagrees, but its arguments are unavailing.

Axxess first argues that when it filed the First Motion to Vacate, "it did not fully understand the scope of Ms. Lenox's excusable neglect." Appellant's Br. at 23. But Axxess does not explain why it could not have gathered the necessary information in the three weeks between when Ms. Lenox returned from bereavement leave and when Axxess filed its First Motion to Vacate. Axxess does not even acknowledge this three-week period, except to state that its counsel tried to reach

20

Ms. Lenox, who was "incommunicado." Reply Br. at 4. No explanation is given for why Ms. Lenox—who was not overseas and not on bereavement leave—could not be reached in the three-week period. And there were opportunities for Axxess to give an explanation. For example, Axxess submitted declarations from its counsel and its CFO, and both describe Ms. Lenox's work overseas and her family emergencies. But neither declaration explains why Ms. Lenox was unavailable during the three-week period, nor do they explain when or how Axxess learned the information necessary to the excusable neglect argument.[11]

However, accepting that Ms. Lenox was unreachable for the three weeks, that does not explain why Axxess could not have made an excusable neglect argument without her input. By the time Axxess filed the First Motion to Vacate, it was apparent that Ms. Lenox had been incorrect about service, and Axxess (her employer) would have known she had taken bereavement leave and worked overseas. If Axxess needed to gather more information, it could have notified the court that there had been a mistake and that it needed more time because Ms. Lenox was unreachable. Instead, Axxess merely noted that it "has evidence to support a motion under Federal Rule of Civil Procedure 60(b)(1)," but it then inappropriately put the burden on the

---

[11] In his declaration, Axxess's counsel stated, "Prior to March 3, 2023, Ms. Lenox never told me how or why the intake of lawsuits procedure failed in this instance." App. Vol. III at 101. The only reason counsel gives for not being able to reach Ms. Lenox is that she was working overseas, yet her overseas work and bereavement leave concluded three weeks before Axxess filed the First Motion to Vacate. Moreover, at least in December 2022, Ms. Lenox emailed with Axxess's counsel while she was working overseas.

district court to "request" that information. App. Vol. II at 43 n.1; *see also* Reply Br. at 9–10 (explaining that Axxess "offered that if the court requested, it would provide supporting documentation which would provide those facts"). For these reasons, we are unconvinced that the district court abused its discretion by finding Axxess was not justified in waiting to raise its excusable neglect argument.

Second, Axxess contends that its Second Motion to Vacate was not a successive Rule 60(b) motion because the First Motion to Vacate was brought under Rule 55. This argument fails for two reasons. First, Axxess's First Motion to Vacate was unclear about what rule it was proceeding under. A footnote in the motion states, "Axxess makes this motion under Federal Rule of Civil Procedure 55(c)." App. Vol. II at 43 n.1. But the footnote also states, "Axxess contends that the judgment should be vacated as void pursuant to Federal Rule of Civil Procedure 60(4) [sic]." *Id.* Nowhere else in the motion does Axxess clarify which rule it proceeded under. But regardless, the First Motion to Vacate could not have been brought under Rule 55. That rule states, "The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). By the time Axxess filed its First Motion to Vacate, the court had entered "a final default judgment," so a motion under Rule 60(b) was required—Rule 55(c) was no longer applicable. *See id.* Consequently, the Second Motion to Vacate was a successive Rule 60(b) motion.

Third, Axxess argues that in the order denying the First Motion to Vacate, the district court refused to "consider[] a Rule 60(b) motion" and thus "implicitly told

22

Axxess it was not foreclosing its right to file a subsequent Rule 60 motion."
Appellant's Br. at 18. This is incorrect. The district court labeled Axxess's argument concerning the court's jurisdiction as a Rule 60(b)(4) argument, and the district court concluded that argument failed on the merits. The district court also acknowledged that Axxess raised an excusable neglect argument under Rule 60(b)(1). The district court rejected this argument because Axxess waived it by not raising it until the reply. But the district court also rejected this argument on the merits, explaining that Axxess had presented no evidence to support its argument. Accordingly, the district court did not "refuse[]" to consider the Rule 60(b)(1) argument, nor did it "implicitly" give Axxess permission to file a successive Rule 60(b) motion. *See* Appellant's Br. at 18, 20. It considered and expressly denied Axxess's Rule 60(b) arguments.

Axxess also contends that it did "*not*" make a Rule 60(b) "argument in its reply brief." Appellant's Br. at 21. Instead, Axxess argues, it was merely "respond[ing] to a footnote in Plaintiffs' opposition." *Id.* Axxess's briefing in the district court is confusing because the First Motion to Vacate invoked both Rule 55 and Rule 60. And in its reply, Axxess argued it had satisfied Rule 60(b)(1)'s "'excusable neglect' factor[s]." App. Vol. II at 196–97. Yet in a footnote, Axxess reiterated that its motion was brought under Rule 55 while also stating it had "evidence in support of a motion under Rule 60(b)." *Id.* at 196 n.16. Regardless of this confusion, the point remains that Axxess could have previously made the excusable neglect argument.

In short, Axxess could have raised the excusable neglect argument in its First Motion to Vacate. For that reason, district court did not abuse its discretion by rejecting the Rule 60(b)(1) argument made in the Second Motion to Vacate.

b.    *Rule 60(b)(4) – void judgment*

Axxess next argues the default judgment is void because Plaintiffs failed to provide Rule 55(b)(2) notice of the default judgment proceedings. *See* Fed. R. Civ. P. 55(b)(2) (requiring notice if "the party against whom a default judgment is sought has appeared personally or by a representative"). Axxess concedes this argument could have been raised in the First Motion to Vacate but contends that is not fatal because a Rule 60(b)(4) motion "may be made at any time."[12] *United States v. Buck*, 281 F.3d 1336, 1344 (10th Cir. 2022). We conclude that Axxess's delay was sufficient reason to reject the Rule 55(b)(2) argument.

"For a judgment to be void under Rule 60(b)(4), it must be determined that the rendering court was powerless to enter it." *V. T. A.*, 597 F.2d at 224. Rule 60(b)(4) is narrow and "applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010); *see also V.T.A.*, 597 F.2d at 225 ("In the interest

---

[12] A Rule 60(b)(4) motion "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1); *V. T. A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224 n.9 (10th Cir. 1979). But "if a judgment is void, it is a nullity from the outset and any 60(b)(4) motion for relief is therefore filed within a reasonable time." *V. T. A.*, 597 F.2d at 224 n.9.

24

of finality, the concept of setting aside a judgment on voidness grounds is narrowly restricted.").

Although Axxess argues the default judgment was void for lack of Rule 55(b)(2) notice, we have held that such an "error should not usually be treated as so serious as to render the judgment void." *Winfield Assocs., Inc. v. Stonecipher*, 429 F.2d 1087, 1091 (10th Cir. 1970). Instead, "[s]uch a procedural defect should be considered in the light of surrounding circumstances and will at times be harmless." *Id.* (internal quotation marks omitted). Relying on these principles, we have held that a district court has discretion to deny a Rule 60(b)(4) argument premised on deficient Rule 55(b)(2) notice when the movant delayed raising the argument. *Id.*

*Winfield Associates, Inc. v. Stonecipher* is a useful comparison. There, a default judgment was entered against a defendant in the Northern District of Illinois. *Id.* at 1088. The defendant sought relief under Rule 60(b), but the district court denied the motion, and the defendant did not appeal the default judgment or the denial of the Rule 60(b) motion. *Id.* at 1089. Thereafter, the judgment was registered in the District of Kansas, and the defendant sought relief before that court under Rule 60(b)(4), arguing the judgment was void because there had not been Rule 55(b)(2) notice. *Id.* at 1088. The court denied the motion, and we affirmed, explaining there was "sufficient basis" to deny the Rule 60(b)(4) motion because the defendant found "himself in this inextricable situation because of inexcusable neglect and his failure thereafter to pursue the adequate and available legal remedy of appeal." *Id.* at 1091.

25

Like the defendant in *Winfield*, Axxess finds itself in this "inextricable situation" because it did not appeal the default judgment or raise the Rule 55(b)(2) notice argument in its First Motion to Vacate. Axxess's delay thus provided sufficient reason for the district court to deny Rule 60(b) relief.[13] *See id.*; *see also United Student Aid Funds*, 559 U.S. at 275 ("Rule 60(b)(4) does not provide a license for litigants to sleep on their rights.").

Axxess resists this conclusion, but it does not cite any authority requiring courts to credit a Rule 55(b)(2) argument that could have been raised in a prior Rule 60(b) motion.[14] And although Axxess argues that *Winfield* is inapplicable, the analysis Axxess discusses is separate from the analysis concerning Rule 55(b)(2) notice. *Compare* Reply Br. at 12 (citing *Winfield*, 429 F.2d at 1090, which treated "this case not under Rule 60(b) but as an independent equitable action"), *with Winfield*, 429 F.2d at 1091 (deeming "it appropriate to separately elaborate upon" the defendant's Rule 55(b)(2) argument). Moreover, Axxess's main point of distinction

---

[13] Our holding is limited to Axxess's delayed attempt at making a Rule 60(b)(4) argument premised on lack of Rule 55(b)(2) notice. We are not deciding whether, in other circumstances, a movant may properly raise a Rule 60(b)(4) argument in a successive motion despite that argument being previously available.

[14] Axxess argues *Hanley v. Four Corners Vacation Properties, Inc.*, 480 F.2d 536 (10th Cir. 1973), demonstrates that a "default judgment is void if [Rule 55(b)(2)] is not followed." Appellant's Br. at 27. But *Hanley* concerned "the lack of service of process" and not a lack of Rule 55(b)(2) notice. 480 F.2d at 538. *Hanley* is thus inapposite.

appears to be that unlike this case, *Winfield* involved "a subsequent Rule 60 motion in a separate court, on a separate action." Reply Br. at 13. But those differences are immaterial because our holding in *Winfield* was based on the defendant's failure to pursue available remedies—the same failure we fault Axxess for here.

For these reasons, Axxess has failed to show the district court abused its discretion by declining to grant relief under Rule 60(b)(4).

c.      *Rule 60(b)(6) – any other reason*

Lastly, Axxess contends the default judgment should be vacated under Rule 60(b)(6), the clause allowing relief for "any other reason that justifies relief." Axxess argues that relief is justified because it did not have notice of the default judgment proceedings and because Plaintiffs acted in bad faith by pursuing "mediation *after* filing the lawsuit." Appellant's Br. at 34.

As previously discussed, Axxess's notice argument could and should have been raised in the First Motion to Vacate.[15] *See supra* Section II.B.2.b. Similarly, when Axxess filed the First Motion to Vacate, it was aware that Plaintiffs had pursued mediation after filing the lawsuit. As a result, Axxess's bad faith argument

---

[15] The Rule 60(b)(6) lack-of-notice argument is also improper to the extent it repackages the Rule 60(b)(4) lack-of-notice argument. *See Spitznas v. Boone*, 464 F.3d 1213, 1225 n.11 (10th Cir. 2006) ("A Rule 60(b)(6) may not be used as a vehicle to re-allege 60(b)(4) allegations."); *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1293 (10th Cir. 2005) ("Parties moving for relief under Rule 60(b) cannot simply throw in subsection (6) without any new arguments and expect to obtain a new trial.").

could have been raised in the First Motion to Vacate. Because these arguments were previously available, the district court had discretion to deny relief when they were raised in a successive motion. *See Servants of Paraclete*, 204 F.3d at 1012; *Lebahn*, 813 F.3d at 1306.

## III.    CONCLUSION

We GRANT Plaintiffs' motion to amend. And because Axxess has not shown any abuse of discretion, we AFFIRM.